IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL A. QUILLING, Receiver | § | |
| For Advanced Financial Services, Inc. | § | |
| | § | |
|     Plaintiff, | § | |
| v. | § | Civil Action No. |
| | § | |
| TRADE PARTNERS, INC., et al | § | 1:03cv0236 |
| | § | |
|     Defendant. | § | |
| | § | |

| | | |
|---|---|---|
| BRUCE S. KRAMER, Receiver | § | |
| For Trade Partners et al., | § | |
| | § | |
|     Receiver-Ancillary Plaintiff, | § | |
| v. | § | |
| | § | |
| NEW ERA ENTERPRISES, INC., | § | |
| NEW ERA LIFE INSURANCE COMPANY, | § | |
| and PHILADELPHIA AMERICAN LIFE | § | |
| INSURANCE COMPANY, | § | |
| | § | |
|     Claimants-Ancillary Defendants. | § | |
| | § | |

## BRIEF SUPPORTING MOTION TO DISMISS

(Oral Argument Requested)

Submitted by:

DAVID MURPHY (P22980)
KAY STANDRIDGE KRESS (P39339)
MARY DEON (P63019)
HANNAH MUFSON (P67171)
PEPPER HAMILTON LLP
100 Renaissance Center, 36th Floor
Detroit, MI 48243-1157
(313) 259-7110
Attorneys for Claimants-Ancillary Defendants

## TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES ......................................................................... iii

CONCISE STATEMENT OF ISSUES PRESENTED ............................. vii

INTRODUCTION ............................................................................................ 1

STANDARD ON MOTION TO DISMISS .................................................. 4

STATEMENT OF FACTS .............................................................................. 6

ARGUMENTS ................................................................................................ 10

    1.     **Plaintiff Has Failed To State Any Valid Objection To The Proofs of Claim Filed By The New Era Companies.  Counts I A and I B Must Be Dismissed.** ................................................................... 10

    2.     **Plaintiff Has Failed To State Any Claim To Rescind, Avoid, Equitably Subordinate Or Limit The Amount Of Any Of The Proofs Of Claim Filed By The New Era Companies.  Counts I A and  I B Must Be Dismissed.** ........ 13

    3.     **Plaintiff Failed To State A Claim For Aiding And Abetting A Breach Of Fiduciary Duty.  Count II A Must Be Dismissed.** ................. 19

    4.     **Plaintiff Failed To State A Claim For Aiding And Abetting Corporate Waste.  Count II B Must Be Dismissed.** ................................ 20

    5.     **Plaintiff Has Failed To State A Claim For Conspiracy.  Count II B (SIC) Must Be Dismissed** ................................................... 20

    6.     **Plaintiff Has Failed To State A Claim For Violation Of "RICO", 18 U.S.C. § 1962 *et seq.,* Or For Aiding And Abetting A Violation Of 18 U.S.C. § 1962, *et seq.*  Count IIC Must Be Dismisssed** ............................... 22

    7.     **Plaintiff Failed To State A Claim To Avoid A Fraudulent Transfer Under MCL § 566.31 *et seq.*  Count IID Must Be Dismissed.** .................. 31

    8.     **Greenville LLC And Gateway LLC Fail To State A Claim For "Deepending Insolvency."** ................................................... 33

    9.     **The Doctrine Of *In Pari Delicto* Bars All Of The Claims Of Debtors Greenville LLC And Gateway LLC.** ............................................ 36

    10.    **Plaintiff Makes No Allegations Regarding New Era Enterprises, Inc. And Accordingly The Complaint Must Be Dismissed As To This Defendant.** ................................................................ 37

    11.    **Plaintiff Has Not Pled Facts Entitling Plaintiff To Treat New Era Life, PALIC, Enterprises Or Midwest As A Single Entity.** ...................... 37

12.    **Plaintiff Has Not Pled Any Facts Entitling Him To Substantively Consolidate Trade Partners, Inc. With Gateway LLC, Greenville LLC, Music Valley LLC Or Any Other Entity.**............................................... **38**

**CONCLUSION** ........................................................................................................ **39**

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### FEDERAL CASES

<u>Advocacy Organization for Patients & Providers v. Automobile Club Insurance Association</u>, 176 F.3d 315 (6th Cir. 1999)..........................................................25, 26

<u>Anderson v. Ayling</u>, 2005 U.S. App. LEXIS 1152 (3rd Cir. 2005) ........................................23, 24

<u>Armco Industrial Credit Corp. v. SLT Warehouse Co.</u>, 782 F.2d 475 (5th Cir. 1986) ................31

<u>Beck v. Prupis</u>, *529* U.S. *494, 146* L. Ed. 2d *561, 120* S. Ct. *1608 (2000)* ....................................24

<u>Blount Financial Services, Inc. v. Walter E. Heller Co.</u>, 819 F.2d 151 (6th Cir. 1987)................27

<u>Bovee v. Coopers & Lybrand C.P.A.</u>, 272 F.3d 356 (6th Cir. 2001) .............................................5

<u>Brege v. Lakes Shipping Co.</u>, 2004 U.S. Dist. LEXIS 26423 (E.D. Mich. 2004)...................28, 31

<u>Bubis v. Blanton</u>, 885 F.2d 317 (6th Cir. 1989) ........................................................................36

<u>Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.</u>, 511 U.S. 164, 114 S. Ct. 1439 (1994)............................................................................................29, 30

<u>Central Distributors of Beer, Inc. v. Conn</u>, 5 F.3d 181 (6th Cir. 1993), *cert denied*, 512 U.S. 1207, 114 S. Ct. 2678 ...............................................................................26, 27

<u>Charter Oak Fire Insurance Co. v. Broan Nutone, LLC</u>, 348 F. Supp. 2d 934 (W.D. Tenn. 2004) ........................................................................................................................5

<u>Craighead v. E.F. Hutton & Co., Inc.</u>, 899 F.2d 485 (6th Cir. 1990) ......................................27, 29

<u>Estes v. N&D Properties, Inc. (In re N&D Properties, Inc.)</u>, 799 F.2d 726 (11th Cir. 1986) .........................................................................................................................17

<u>Fabricators, Inc. v. Technical Fabricators, Inc. (In re Fabricators)</u>, 926 F.2d 1458 (5th Cir. 1991) .....................................................................................................................17

<u>Geisert v. Corriveau</u>, 140 F. Supp. 29 (E.D. Mich. 1956) .........................................................32

<u>General Motors Corp., et al. v. de Arriortua, et al.</u>, 948 F. Supp. 670 (E.D. Mich., 1996) ..........30

<u>Gould, Inc. v. Mitsui Mining & Smelting Co., Ltd.</u>, 750 F. Supp. 838 (N.D. Ohio 1990)............27

Greenberg v. The Life Insurance Company of Virginia, 177 F.3d 507 (6th Cir. 1999)................5

Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 117 L. Ed. 2d 532, 112 S. Ct. 1311 (1992)......................................................................................................................24

In re Autostyle Plastics, Inc., 269 F.3d 726 (6th Cir. 2001) ..............................................13, 14 16

In re Cold Harbor Associates, 204 B.R. 904 (Bankr. E.D. Va. 1997) .....................................14, 15

In re Dublin Securities, Inc., 133 F.3d 377 (6th Cir. 1997) ...........................................................36

In re Dublin Securities, Inc., 1998 U.S. App. LEXIS 9336 (6th Cir. 1998)...................................36

In re Fabricators, 929 F.2d 1458 (5th Cir. 1991) ...........................................................................14

In re Global Service Group, LLC, 316 B.R. 451 (Bankr. S.D. N.Y. 2004)......................34, 35, 36

In re Hedged Investments Associates, Inc., 380 F.3d 1292 (10th Cir. 2004) ...................15, 17, 18

In the Matter of Lake States Commodities, Inc., 936 F. Supp. 1461 (N.D. Ill., 1996).................30

Jones v. Hyatt Legal Services (In re Dow), 132 B.R. 853 (Bankr. S.D. Ohio 1991)....................36

Krieger v. Gast, 2000 WL. 288442 (W.D. Mich. 2000) .................................................................19

Krum v. Sheppard, 255 F. Supp. 994 (W.D. Mich. 1966), aff'd, 407 F.2d 490 (6th Cir. 1967) ..........................................................................................................................21

Maio v. Aetna, Inc., 221 F.3d 472 (3d Cir. 2000) .........................................................................23

Mayer v. Mylod, 988 F.2d 635 (6th Cir. 1993) ...............................................................................4

Memorex Corp. v International Business Machines Corp., 555 F.2d 1379 (9th Cir. 1977) .........36

Miller v. Curries, 50 F.3d 373 (6th Cir. 1995)................................................................................4

New England Health Care Employees Pension Fund v. Ernst  & Young, LLP, 336 F.3d 495 (6th Cir. 2003).......................................................................................................5

Paycom Billing Services, Inc. v. Payment Resources International, et al., 212 F. Supp. 2d 732 (W.D. Mich. 2002)............................................................................................25

Pennsylvania Associate of Edward Heirs v. Rightenour, et. al., 235 F.3d 839 (3rd Cir., 2000) ....................................................................................................................30

Reeves v. Ernst & Young, 507 U.S. 170, 113 S. Ct. 1163 (1993).................................................28

Rolo v. City Investing Co. Liquidating Trust, et al., 155 F.3d 644 (3rd Cir. 1998) .....................30

Roth Steel Tube v. Commissioner of Internal Revenue, 800 F.2d 625 (6th Cir. 1980) ....14, 15, 16

Schied v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434 (6th Cir. 1988).....................................4

Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985) ...................................................................26

Sistrunk v. City of Strongsville, 99 F.3d 194 (6th Cir. 1996).........................................................4

Trollinger v. Tyson Foods, Inc., 370 F.3d 602 (6th Cir. 2004) ..................................................4, 5

United Rentals (North America, Inc.) v. Keizer, 202 F. Supp. 727 (W.D. Mich. 2002)..............21

United States v. Colorado Invesco, Inc., 902 F. Supp. 1339 (D. Colo. 1995).............................17

Van Betulius, et al. v. Hanna, et. al., 1996 U.S. Dist. LEXIS 19954 (W.D. Mich. 1996).......30, 31

Vandenbroeck, et al. v. Commonpoint Mortgage Co., 210 F.3d 696 (6th Cir. 2000).............27, 28

Weiner v. Klais and Company, Inc., 108 F.3d 86 (6th Cir. 1997)...................................................5

## STATE CASES

Automobile Workers' Temple Association v. Janson, 227 Mich. 430; 198 N.W. 992
    (1924)......................................................................................................................21

Bahr v. Miller Bros. Creamery, 365 Mich 415; 112 N.W.2d 463 (1961)......................................20

Fenestra, Inc. v. Gulf American Land Corp., 377 Mich 565; 141 N.W.2d 36 (1966)..................21

Mays v. Three Rivers Rubber Corp., 135 Mich. App. 42; 352 N.W.2d 339 (1984) ....................21

Magid v. Oak Park Racquet Club Assocs., 84 Mich. App. 522; 269 N.W.2d 661 (1978)............21

Roche v. Blair, 305 Mich. 608; 9 N.W.2d 861 (1943) .................................................................21

Goldman v. National Bank of Detroit, 236 Mich. App. 517, 601 N.W.2d 126 (1999) ................19

Rosenberg v. Rosenberg Brothers Special Account, 134 Mich. App. 342; 351 N.W.2d
    563 (1984)................................................................................................................21

## DOCKETED CASES

Trade Partners Gateway Center, LLC v. New Era Life Insurance Company, et al, Adv. Pro. No. 1:04 CV 0786 (Ex. 3) ...................................................................................3

Trade Partners Greenville, LLC v. New Era Life Insurance Company, Adv. Pro No. 04-88971 (Ex. 2) ...........................................................................................................3

## STATUTES

11 U.S.C. § 506.........................................................................................................33

11 U.S.C. §510 .........................................................................................................18

11 U.S.C. §510(c) ...........................................................................................13, 17, 18

18 U.S.C. § 1961(1) .......................................................................................25, 26, 28, 30

18 U.S.C. §1962.............................................................. iv, 22, 23, 24, 25, 28, 29

18 U.S.C. §1964(c) ...........................................................................23, 24, 25, 29

Fed. R. Civ. P. 8(a) .................................................................................................. vii

Fed. R. Civ. P. 9(b) .......................................................................19, 22, 26, 28, 31

Fed. R. Civ. P. 12(b) ................................................................................................4

## STATE STATUTES

MCL 566.31 et seq.............................................................................................31, 32

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

Plaintiff in this civil action is a Receiver.  He and two bankrupt LLCs he controls filed complaints objecting to the claims filed by Defendants and seeking affirmative relief, both legal and equitable .  The Complaints, however, are not short and plain statements of the Plaintiffs' claims and do not show that Plaintiffs are entitled  to relief.  F.R. Civ. P 8(a).  Moreover, Plaintiffs' complaints are filled with innuendo to the effect that Defendants are guilty of fraud or were aiders and abettors of fraud.  In that regard, Plaintiffs' complaints are flawed in that they do not comply with the rigorous standard of F.R. Civ. P. 9(b).  The following are the issues raised.

1.      **Has Plaintiff stated a valid objection to the Claims filed by the New Era Companies?**

2.      **Has Plaintiff stated a claim upon which relief can be granted to rescind, avoid, equitability subordinate or limit the amount of Claim Nos. 4574-4577 and 4583 filed by the various New Era Companies?**

3.      **Has Plaintiff stated a claim upon which relief can be granted for aiding and abetting a breach of fiduciary duty?**

4.      **Has Plaintiff stated a claim upon which relief can be granted for aiding and abetting corporate waste?**

5.      **Has Plaintiff stated a claim upon which relief can be granted for conspiracy?**

6.      **Has Plaintiff stated a claim upon which relief can be granted for violation of 18 USC §1962 *et. seq.* ("RICO") or for aiding and abetting a RICO violation?**

7.      **Has Plaintiff stated a claim upon which relief can be granted to avoid one or more fraudulent transfers pursuant to MCL §566.31?**

8.      **Have Plaintiff Debtors Gateway LLC and Greenville LLC stated a claim upon which relief can be granted for "deepening insolvency"?**

9.      **The doctrine of *in pari delicto*  bars all of the Claims of Debtors Greenville LLC and Gateway LLC.**

10.     **Plaintiff makes no allegations regarding New Era Enterprises, Inc. and accordingly the Complaint must be dismissed as to this Defendant.**

11.     **Plaintiff has not pled facts entitling Plaintiff to treat new Era Life, PALIC, Enterprises or Midwest as a single entity.**

12.     **Plaintiff has not pled any facts entitling him to substantively consolidate Trade Partners, Inc. with Gateway LLC, Greenville LLC, Music Valley LLC or any other entity.**

## <u>INTRODUCTION</u>

This case is about an overzealous plaintiff who sees conspiracy around every corner, and a deep pocket in the likes of the defendant insurance companies.

Trade Partners, Inc. appears to have been a corporate front for a fraud – a Ponzi scheme – perpetrated by Tom Smith.  The New Era Life insurance Company ("New Era Life"), New Era Life Insurance Company of the Midwest ("Midwest"), Philadelphia American Life Insurance Company ("PALIC") (collectively the "New Era Life Companies," and, sometimes with New Era Enterprises, Inc., ("Enterprises"), the "New Era Companies") were victimized by Smith's scheme and invested in Trade Partners Inc.'s fraudulent investment vehicles.  Now, Plaintiff, the Receiver for Trade Partners, Inc. claims that the New Era Companies were not victims of the fraud but rather, were actually Smith's co-conspirators and that they, too, are guilty of Smith's fraud.  While <u>nothing</u> could be further from the truth, the New Era Companies acknowledge that on this Motion to Dismiss, the Court must accept Plaintiff's well-pled factual allegations and <u>permissible</u> inferences from those facts, as true.

The Receiver filed Complaints which attempt, albeit poorly, both to state objections to and to disallow the New Era Life Companies' claims filed in the Trade Partners, Inc. Receivership and in two Chapter 11 cases and to claim that the New Era Companies aided and abetted Smith's breach of Smith's fiduciary duties, aided and abetted corporate waste, are liable as conspirators of Smith, have violated RICO, aided and abetted Smith's alleged RICO violations, received fraudulent transfers and, through two Debtor LLCs, are liable for the "deepening insolvency" of the two Debtor LLCs.

New Era Life and PALIC invested in several limited liability companies created by Smith and his partner, Christine Zmudka.  New Era Life, Midwest and PALIC also made

ordinary course of business secured real estate loans to other limited liability companies created by Smith and Zmudka.

Smith and Zmudka had formed both Trade Partners, Inc. and TPI Management LLC. Trade Partners, Inc. was a corporation which, among other things, bought life insurance polices at a discount from terminally or seriously ill policyholders and assigned such policies to limited liability companies, including those in which the New Era Companies invested. TPI Management LLC was the managing member of and controlled these viatical LLCs.

Other LLCs, also in which Smith was a direct or indirect member, acquired real estate ostensibly for investment purposes. Between 1999 and the end of 2002, the New Era Life Companies made loans to these real estate LLCs which were secured by first mortgages in favor of the New Era Life Companies.

In early 2003 Michael Quilling sued Trade Partners, Inc. claiming, among other things, fraud, and requested the appointment of a receiver. Bruce Kramer was appointed. It appears, however, that Trade Partners, Inc. was a front for Smith to defraud investors. It also appears that the complicated web of viatical LLCs were vehicles for Smith's fraudulent activity. The appointment of Mr. Kramer as Receiver of Trade Partners, Inc. and of many of the viatical LLCs and real estate LLCs brought Smith's fraudulent scheme to a halt. The subsequent investigation revealed that many, many investors in the viatical LLCs were defrauded. These investors, in general, filed claims with the Receiver.

The New Era Life Companies were among the many investors who were bilked out of millions of dollars by Smith. New Era Life, PALIC and Midwest filed claims with the Receiver. Two claims (4583 and 4584) were for the money invested by the New Era Life Companies in the viatical LLCs. Five claims were for the secured debt owed by real estate LLCs

stemming from real estate loans secured by first mortgages. The New Era Life Companies, collectively, are owed over $9.1 million by the real estate LLCs and over $2.2 million by the viatical LLCs.

The Receiver has now filed an Ancillary Complaint in the Receivership main case (Ex. 1) objecting to the New Era Life Companies' claims and seeking equitable relief and damages against them and Enterprises. The Ancillary Complaint, among other things, utterly and completely fails to provide any specifics about any actionable conduct by any of the New Era Companies.

Receiver had also caused two real estate LLCs to file bankruptcy cases: *TPI Greenville LLC*, ("Greenville LLC") Bankruptcy Case No. 04-09055-JCS and *TPI Gateway Center LLC*, ("Gateway LLC") Bankruptcy Case No. 1:04-CV-00417-RAE. Each of these two Debtors, controlled by the Receiver, have filed Adversary Proceedings against one or more of the New Era Life Companies captioned as *Trade Partners Greenville, LLC v. New Era Life Insurance Company*, Adv. Pro No. 04-88971 (Ex. 2) and *Trade Partners Gateway Center, LLC v. New Era Life Insurance Company, et al*, Adv. Pro. No. 1:04 CV 0786 (Ex. 3). The Complaints in the two Adversary Proceedings incorporate and adopt the Ancillary Complaint and raise the topic of "deepening insolvency".

As a matter of law, the Ancillary Complaint and the two Adversary Complaints must fail as no valid objection to any New Era Life Companies' Claim is stated and no claim upon which relief may be granted is stated.

## STANDARD ON MOTION TO DISMISS

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may, as its first response to a complaint, move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted."  In reviewing a complaint for failure to state a claim, courts construe the complaint liberally in a plaintiff's favor and accept all factual allegations and permissible inferences as true. See *Sistrunk v. City of Strongsville*, 99 F. 3d 194, 197 (6th Cir. 1996); see also *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993) (purpose of Rule 12(b)(6) is to allow defendant to test whether, as a matter of law, plaintiff is entitled to legal relief even if everything alleged in complaint is true).

Notwithstanding liberal construction in the plaintiff's favor, a complaint must contain "either direct or inferential allegations respecting all the material elements" and those allegations must amount to more than "bare assertions of legal conclusions."  *Schied v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

In testing the sufficiency of a complaint, a court must determine whether it is possible for a plaintiff to prove any set of facts in support of its claim that would entitle plaintiff to relief.  *Miller v. Curries*, 50 F.3d 373, 377 (6th Cir. 1995).  A court may dismiss under Rule 12(b)(6) where the plaintiff can prove no set of facts in support of its claim that would entitle it to relief.  *Id.*; *Shied*, 859 F.2d at 436.

While courts "primarily consider the allegations in the complaint" on a Rule 12(b)(6) motion, courts are "not limited to the four corners of the complaint."  *Wright & Miller*, Federal Practice and Procedure: Civil 3d, §1357, pp. 375-376.  For example, in *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602 (6th Cir. 2004), the district court had relied on the existence of the union and a collective bargaining agreement, even though plaintiffs had not mentioned them

in their complaint. The Sixth Circuit ruled that the district court properly considered these facts from outside the complaint because they could be judicially noticed. *Id*. at pp. 607, 616. See, also, *Charter Oak Fire Ins. Co. v. Broan Nutone, LLC*, 348 F. Supp. 2d 934 (W.D. Tenn. 2004) (court may take judicial notice of prior pleadings and procedures on a motion to dismiss); *New England Health Care Employees Pension Fund v. Ernst_& Young, LLP*, 336 F.3d 495 (6th Cir. 2003) (court may consider public records if appropriate for judicial notice ); *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356 (6th Cir. 2001) (SEC filings); *Greenberg v. The Life Insurance Company of Virginia*, 177 F.3d 507 (6th Cir. 1999) (document referred to in complaint and central to plaintiff's claim); *Weiner v. Klais and Company, Inc.*, 108 F.3d 86 (6th Cir. 1997) (referred to in complaint and central to plaintiff's claim).

## STATEMENT OF FACTS

New Era Life Insurance Company ("New Era Life"), New Era Life Insurance Company of the Midwest ("New Era Midwest") and Philadelphia American Life Insurance Company ("PALIC"), (collectively called "New Era Life Companies") are Texas corporations with their principal places of business in Texas. (Ex. 1, Ancillary Complaint, ¶2.) New Era Enterprises, Inc. ("Enterprises"), a Nevada corporation, is the parent of New Era Life, which owns 100% of New Era Midwest and PALIC. (Ex. 1, Ancillary Complaint, ¶8.) New Era Life, New Era Midwest and PALIC are regulated by the Texas Department of Insurance. (Ex. 1, Ancillary Complaint, ¶13.) (The New Era Life Companies and Enterprises are collectively called "New Era Companies.") New Era Life, PALIC and New Era Midwest provide, among other things, life or health insurance to the holders of policies it issues. (Ex. 1, Ancillary Complaint, ¶¶7,8.) Bill Chen, at all times pertinent to the Complaint, was, and currently is, the Chief Executive officer of the New Era Companies. (Ex. 1, Ancillary Complaint, ¶9.)

Beginning in 1999, New Era Life and PALIC purchased membership interest in limited liability companies ("viatical LLCs") formed by TPI Management LLC, whose members were Thomas Smith, Christine Zmudka, and others who were officers, directors or shareholders of Trade Partners, Inc. (sometimes, "TPI"). Additionally, the three New Era Life Companies made real estate loans to other, different LLCs ("real estate LLCs"), repayment of which loans were secured by first mortgages on real property owned by the borrower LLCs. The three New Era Life Companies carried the real estate loans and membership interests on its books and records. (Ex. 1, Ancillary Complaint, ¶14.)

With regard to certain viatical LLC memberships purchased by New Era Life or PALIC, New Era Life and PALIC understood that the proceeds of the investments would be

loaned by the borrower LLC to Trade Partners, Inc. under certain terms and conditions, including the establishment of an escrow account at Grand Bank (now Macatawa Bank).

New Era Life, PALIC and Midwest made real estate loans in three transactions, known as "Gateway" or "Desert Carmel," "Greenville" and "Music Valley" (being loans by New Era Life to Gateway LLC (now known as TPI Desert Carmel, LLC), Greenville LLC, and TPI Music Valley LLC ("Music Valley"). Repayment was secured by a first mortgage on the real estate owned by the borrower. (Ex. 1, Ancillary Complaint, ¶21.)

In 1999, New Era Life had made a secured real estate loan to TradeArk LLC, secured by a first mortgage on real estate owned by TradeArk. This loan was paid in full by the assignee of the real estate. (Ex. 1, ¶23.)

Attached hereto are copies of Proofs of Claim Nos. 4574, 4575, 4576, 4577, 4578, 4583 and 4584 marked, respectively, as Exhibits 3, 4, 5, 6, 7, 8, 9 and 10.[1]

## Claim 4574

Claim 4574 was filed by New Era Life as a secured claim based on a secured loan it made to Trade Partners Music Valley, LLC. As stated in the attachments to the Claim, on December 30, 2002, New Era Life loaned $3,600,000 to Music Valley LLC which loan was secured by a Deed of Trust and Security Agreement granting New Era Life a lien against property located in Davidson County, Tennessee. Music Valley's Note, the Deed of Trust and Security Agreement, legal description of the property, UCC Financing Statement Information, and the Guaranty by Trade Partners, Inc. of the debt, are all attached to the Proof of Claim. The

---

[1]  The Court may consider the content of these claims as they are pleadings or papers filed with the Court, relied upon by Plaintiff and are referred to in and are central to Plaintiff's Complaints. New Era has a valid, perfected, first lien and mortgage on the real estate owned by Gateway LLC, on the real estate owned by Greenville LLC, on the real estate owned by Music Valley LLC.

Claim amount is $4,076,061.40.  This is a straight-forward, real estate transaction where New Era Life loaned money to Music Valley LLC.

**Claim 4575**

Claim 4575 was filed by New Era Life as a secured claim based on a secured loan of $1,499,350 made by New Era Life to Greenville, LLC.  Greenville LLC's Promissory Note, the Mortgage by Greenville to New Era Life, UCC Recording Information, the Guaranty by Trade Partners, Inc. and certain bank information and internal information of New Era Life are attached to the Proof of Claim.  The amount of the Claim is $1,701,748.77.  This is a straight-forward real estate loan transaction.  This Claim is a secured claim against Trade Partners Greenville LLC in its bankruptcy case pending in this Court under Case No. 04-09055-JCS and is the subject of Debtor's adversary complaint in Adversary Proceeding No. 04-88971.

**Claim 4576**

Claim 4576 was filed by New Era Life as a secured claim based a secured loan of $2,000,000 it made to Gateway LLC.  The total advance by the New Era Life Companies was $4,000,000.  The Promissory Note, Deed of Trust and Fixture Filing securing repayment of the loan, and UCC Recording Information are all attached to the Proof of Claim.  The amount of the Claim is $2,373,247.33.  This is a straight-forward real estate loan transaction.  This Claim is a secured claim in Gateway Center LLC's bankruptcy case which has had its reference withdrawn and is now pending in the District Court under Case No. 1:04-CV-00417-RAE and is the subject of a complaint in an adversary proceeding brought by Debtor against the New Era companies under Adversary Proceeding No. 1:04CV-0786 in the District Court.

**Claim 4577**

Claim 4577 was filed by PALIC as a secured claim based on its $1,000,000 participation with New Era Life in a $4,000,000 loan made to Gateway LLC.  This Claim, too, is

a secured claim.  The documents as are attached to Claim 4576 are also attached to this Claim. The amount of this claim is $1,186,623.67.   This Claim was also filed in the *Gateway LLC* bankruptcy.

**Claim 4578**

Claim 4578 was filed by Midwest as a secured claim based on its $1,000,000 participation with New Era Life in a $4,000,000 loan made to Gateway LLC.  This claim, too, is a secured claim.  The same documents are attached to this Claim as are attached to Claims 4576 and 4577.  The amount of this claim is $1,186,623.67.  This is a simple, straight-forward real estate transaction.  This Claim was also filed in the *Gateway LLC*, bankruptcy.

**Claim 4583**

Claim 4583 was filed by New Era Life based upon the investment it and PALIC made into viatical LLCs managed by TPI Management LLC, whose members were Tom Smith and Christine Zmudka.   As shown in the attachment to this Claim, New Era Life's first investment transaction with a "TPI" LLC was in October 1999.   The involved LLC was TPI Monthly Income XV LLC ("LLC XV").   PALIC's investments in LLCs are also detailed in attachments this Claim.  Attached to the Claim is a summary of New Era Life's investments into viatical LLC's.  Other documents establishing the investments are also attached.  Claim 4583 is in the amount of $1,426,062.50.

**Claim 4584**

Claim 4584 was filed by PALIC based on investments in viatical LLCs.  As with Claim 4583, this Claim has attached a summary of the transactions and supporting documentation regarding PALIC's investments.  Claim 4584 is in the amount of $798,595.00.

## ARGUMENTS

1. **Plaintiff Has Failed To State Any Valid Objection To The Proofs of Claim Filed By The New Era Companies.  Counts I A and I B Must Be Dismissed.**

Counts IA and IB of the Ancillary Complaint are objections to five of the seven Claims filed by New Era Life, PALIC and New Era Midwest.  (Exs. 2, 3, 4, 5, 6, 7 and 8.) Although Enterprises has not filed any claim, it is named as a defendant.  The filed Claims are summarized as follows:

| CLAIM # | CLAIMANT | AMOUNT | SECURED | BASIS |
| --- | --- | --- | --- | --- |
| 4574 | New Era Life | $ 4,076,061 | Yes | Secured loan to Trade Partners Music Valley Inn, LLC |
| 4575 | New Era Life | $ 1,701,749 | Yes | Secured loan to Trade Partners Greenville, LLC |
| 4576 | New Era Life | $ 2,373,247 | Yes | Secured loan to Trade Partners Gateway Center, LLC |
| 4577 | PALIC | $ 1,186,624 | Yes | Secured loan to Trade Partners Gateway Center, LLC |
| 4578 | New Era Midwest | $ 1,186,624 | Yes | Secured loan to Trade Partners Gateway Center, LLC |
| 4583 | New Era Life | $ 1,426,062 | No | Purchase of membership interests |
| 4584 | PALIC | $ 798,595 | No | Purchase of membership interests |

The Receiver's objections to five of the seven Claims are found in Count I(A) of the Ancillary Complaint ("MIP Investments") and Count I(B) ("Real Estate Notes").  The

Receiver styles these objections as causes of action for "declaratory relief for claims determinations." (Ex. 1, ¶¶25-31.)

Receiver says he has made "determinations" about the claims (Ex. 1, Ancillary Complaint, ¶26) and asks the Court to "rescind/avoid the purposted security interests," to "subordinate" them or limit them to "a proportionate share of [New Era's] overall net cash loss". (Id).

## A.   COUNT IA FAILS TO STATE ANY VALID OBJECTION

As to Claims 4583 and 4584, the Receiver doesn't claim that New Era and PALIC failed to pay the purchase price for the LLC membership interests or or that there is some fatal flaw in the purchase or that the amounts are not correct.  The Receiver only argues that it is somehow not fair to other creditors of the LLCs that the New Era Companies be paid on their claims.  "It's not fair" simply is not a valid objection to a proper proof of claim.

The Receiver mentions "constructive trust laws" yet doesn't state anything about the topic or even name the state whose constructive trust law might be applicable.  Imposition of a constructive trust is a remedy which may be employed to give relief to a defrauded party.  Here, if anything, the New Era Life Companies were defrauded.  A constructive trust should be imposed on LLC assets for PALIC's and New Era Life's benefit.

The Receiver is flat wrong about "net loss".  As seen from the Secured Claims, $9,099,350 of principal is owed on the secured loans to Music Valley, Greenville and Gateway.  As seen from Claims, 4583 and 4584, separate entities filed separate claims.  They can't be consolidated absent a viable claim for relief or reason why – such as piercing the corporate veil -- none of which have been pleaded.

The New Era Companies have not received, pre-receivership or post, anything to which they were not entitled under the loan documents for the Secured Claims or under the terms

of its membership in the viatical LLC's. "Disproportionately large return" is a vague and ambiguous term which doesn't meet the requirements of F.R. Civ. P. 8(a) or 9(b). Even if the New Era Life Companies, pre-receivership, were paid interest on their secured claims or interest on their membership investments, even at an above-market rate, this does not invalidate the claims. Receiver doesn't claim the interest rates were usurious, just that payment of the claims is not fair.

The Receiver's claims are generally in violation of F.R. Civ. P. 9(b). He alleges that one or more of the New Era Companies "participated in the scheme", yet he never – never— states who, when, where, how or why? What scheme? Smith's scheme to commit mail fraud? When? Before New Era Life's loans or investments? What illegal acts did one of the New Era Companies commit? Plaintiff never states these facts. Plaintiff only generally states that Smith defrauded investors of Trade Partners, Inc. and that the New Era Companies "lending" made possible a portion of the scheme. Is a credit card company liable because a gun bought on credit was used in a hold-up?

Claims 4583 and 4584 arise from the investments by New Era Life and PALIC in viatical LLCs, whose purpose, generally, was to invest in viatical's through Trade Partners, Inc. (Ex. 9, Offering Memorandum, TPI Monthly Income XXIX LLC ("LLC 29"), 12/28/01, p. 8.) Typically, the initial sole member of such viatical LLCs was TPI Management, LLC (Ex. 9, Operating Agreement LLC 29, p. 1.) The members of TPI Management, LLC were Tom Smith and Christine Zmudka (Ex. 9), who also were the shareholders of Trade Partners, Inc. (Ex. 9.) The documents attached to Claims 4583 and 4584 show the date and amount of the investments, how the investments were treated and how they are accounted for by the New Era Life Companies.

Claims 4583 and 4584 are unsecured claims for the amounts invested in the viatical LLCs and should be treated as such.  They should be paid from the assets of the involved LLCs which assets include the LLC's secured claims against Trade Partners, Inc.  For each LLC liquidated in the Trade Partners, Inc. receivership action, first its secured creditors should be paid, then unsecured creditors, and then to the claimants who purchased memberships.  To the extent the claims are based on LLC membership interests, they are equity and should be paid from the LLC assets after all valid claims of creditors against the specific LLC are paid.

> **2.      Plaintiff Has Failed To State Any Claim To Rescind, Avoid, Equitably Subordinate Or Limit The Amount Of Any Of The Proofs Of Claim Filed By The New Era Companies.  Counts I A and  I B Must Be Dismissed.**

"Equitable subordination" is a cause of action created by 11 U.S.C. §510(c).  There is no cause of action outside of Title 11 for "equitable subordination."  There is no reported case permitting use of this doctrine outside of bankruptcy.  Therefore, no cause of action exists to equitably subordinate Claims 4574, 4583 or 4584 (the "Non-Bankruptcy Claims").

Claim 4575 is asserted against Debtor Greenville LLC only, and Claims 4576, 4577 and 4578 are asserted against Debtor Gateway Center LLC, only (the "Bankruptcy Claims").

With respect to the Bankruptcy Claims, to state a claim for equitable subordination, under 11 U.S.C. §510(c), a trustee must plead that "(1) the claimant must have engaged in some kind of inequitable conduct; (2) the misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant; and (3) equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act." *In re Autostyle Plastics, Inc.*, 269 F.3d 726, 744 (6th Cir. 2001) ("Autostyle").

Nowhere in the Ancillary Complaint or the Complaints in the *Gateway* and *Greenville* Chapter 11 cases, is there any allegation or claim that any of the New Era Companies were "insiders." "If a claimant is not an insider, then evidence of more egregious conduct such as fraud, spoliation or overreaching is necessary." *In re Fabricators*, 929 F.2d 1458, 1465 (5th Cir. 1991) as cited by the court in *Autostyle*, 269 F.3d 726,745. Plaintiff failed to plead any fraud with specificity. Nowhere in the Ancillary Complaint or the Complaints in the Adversary Proceedings is there any mention of an injury to a creditor.

### A. <u>Plaintiff Fails to State a Claim to Avoid a Fraudulent Transfer</u>

To the extent the Receiver claims that the grant of a mortgage by Greenville LLC or Gateway LLC to one or more of the New Era Life Companies was a fraudulent transfer (Ex. 1, Ancillary Complaint, pp. 8-9), Receiver has failed to state such a claim. See Argument 7, below, for the elements of a fraudulent transfer. Each LLC got the proceeds of the loans, which is reasonably equivalent value as a matter of law.

### B. <u>Plaintiff Fails to State a Claim to "Recharacterize" Debt or Equity.</u>

To the extent the Receiver or Debtors seek to recharacterize the New Era Life Companies' Bankruptcy Claims (Claims 4574-4578) as equity, they have failed to state any such claim. "Recharacterization is appropriate where the circumstances show that a debt transaction was actually [an] equity contribution [ ] <u>ab initio</u>. *In re Cold Harbor Assocs*, 204 B.R. 904, 915 (Bankr. E.D. Va. 1997)". *Autostyle, supra* at 748. In *Roth Steel Tube v. Comm'r of Internal Revenue*, 800 F.2d 625 (6th Cir. 1980), the Court of appeals for the Sixth Circuit articulated an eleven-factor test to determine whether recharacterization was appropriate. See *Autostyle*, *supra*, at 749-753.

The factors are: (1) the names given to the instruments, if any, evidencing the indebtedness; (2) the presence or absence of a fixed

- 14 -

maturity date and schedule of payments; (3) the presence or absence of a fixed rate of interest and interest payments; (4) the source of repayments (5) the adequacy or inadequacy of capitalization; (6) the identity of interest between the creditor and the stockholder; (7) the security, if any, for the advances; (8) the corporation's ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; and (11) the presence or absence of a sinking fund to provide repayments. *Roth Steel*, 80 F.2d at 630. No one factor is controlling or decisive. *Ibid*. The factors must be considered within the particular circumstances of each case. *Ibid*. We note that "[t]he more [a transaction] appears to reflect the characteristics of … an arm's length negotiation, the more likely such a transaction is to be treated as debt." *In re Cold Harbor*, 204 B.R. at 915.

The Receiver has not stated any facts to show that the loans were actually equity. The eleven *Roth* factors all weigh in favor of debt. Application of the factors applied to these secured loans require a finding that they were just that --secured real estate loans.

### C.      Plaintiff Is Not Entitled To Have The New Era Companies Claims Recharacterized Or Equitably Subordinated.

In a recent case with facts similar to those at bar, the Tenth Circuit Court of Appeals affirmed the District Court and held that the loan in the case did not meet the Court's criteria for recharacterization or equitable subordination. *In re Hedged Investments Associates, Inc.*, 380 F.3d 1292 (10th Cir. 2004).

There, under "peculiar" circumstances, in 1986, the Bronze Group, Ltd. (a group of private corporate pension trusts) made a loan to Hedged Investments Associates, Inc. ("HIA") evidenced by a note, a security agreement and a UCC-1 financing statement. The $900,000 loan was secured by assets in a trading account at a brokerage house. In the fall of 1990, HIA collapsed and a bankruptcy case was commenced. It was found that HIA was a "stock investment Ponzi scheme which was run for 13 years by James Donahue." *Hedged Investments* at p. 1294-95.

- 15 -

The bankruptcy trustee asked the bankruptcy court to authorize distribution of the estate "so that each claimant or interest holder would receive a pro rata share of the estate based upon the principal he or she had loaned or entrusted to HIA." *Hedged Investments*, *supra*, at 1296. The Bronze Group objected to the trustee's request and asserted that its secured claim had priority over unsecured and equity claims. The bankruptcy court held that the Bronze Group's advances were a loan but subordinated the claim so that it had equal priority with investors. Both the Bronze Group and a group of investors appealed. The District of Colorado affirmed the lower court's decision not to recharacterize the loan, reversed the subordination and entered a judgment in favor of the Bronze Group. The investors then appealed to the Tenth Circuit and lost.

Applying the test of *Roth Steel, supra*, cited by the Court in *Autostyle, supra*, the Tenth Circuit applied thirteen factors and found that six favored treating the lender's funds as a loan and three favored recharacterization.

Here, in the case at bar, there are at least eight (8) factors favoring the New Era secured real estate loans as loans and none against: (1) the transaction documents for the advances to Gateway LLC, Greenville LLC and Music Valley LLC treat the advances as a loan and fulfill the proper formalities, (2) the New Era Life Companies had the right to enforce payment of principal and interest, (3) the New Era Life Companies did not manage or control the borrower LLCs or any Trade Partners entity, (4) the transaction documents did not subordinate the New Era Life Companies to other LLC creditors, (5) the parties intended the transaction to be a loan, (6) the transactions each had a fixed maturity date, (7) there is no identity of interest between the lender and the LLC members or Trade Partners shareholders, and (8) the source of repayment was the value of the real estate.

Here, the Plaintiff failed to plead any facts concerning: (1) the level or amount of capitalization of each borrower LLC, (2) the source of interest payments, (3) the ability of the LLC or Trade Partners to obtain loans from lending institutions, (4) the extent to which the advance was used to acquire capital, and (5) the failure of the Debtor to repay on the due date. Thus, these factors do not cut against treating the secured loans as just that – secured loans.

The *Hedged Investments* court then dealt with the equitable subordination claim under 11 U.S.C. §510(c). The court first noted the critical nature of the requirement of inequitable conduct by the creditor. The court described the "Test for Inequitable Conduct":

> "Inequitable conduct" for subordination purposes encompasses three categories of misconduct: "(1) fraud, illegality, and breach of fiduciary duties; (2) undercapitalization; or (3) claimant's use of the debtor as a mere instrumentality or alter ego." *Fabricators, Inc. v. Technical Fabricators, Inc. (In re Fabricators)*, 926 F.2d 1458, 1467 (5th Cir. 1991).

*Hedged Investments, supra*, p. 1301.

In the case at bar, there are no facts pled with specificity as to any of these types of inequitable conduct. And, there is no allegation that any of the New Era Life Companies or their agents were "insiders" of or fiduciaries of or controlled Trade Partners or any viatical or real estate LLC.

> Where the claimant is an insider or a fiduciary, the party seeking subordination need only show some unfair conduct, and a degree of culpability, on the part of the insider. *See Estes v. N&D Properties, Inc. (In re N&D Properties, Inc.)*, 799 F.2d 726, 731 (11th Cir. 1986); *United States v. Colorado Invesco, Inc.*, 902 F.Supp. 1339, 1344 (D. Colo. 1995). If the claimant is not an insider or a fiduciary, however, the party seeking subordination must "demonstrate even more egregious conduct such as gross misconduct tantamount to fraud, misrepresentation, overreaching or spoliation [sic]." *In re Castletons*, 990 F.2d at 559 (internal quotations omitted).

*Id.*

- 17 -

In the case now before this Court, no facts are pled alleging any non-insider inequitable conduct.

Finally, the *Hedged Investments* court analyzed the lender's conduct.

> The Bronze Group's conduct mentioned in the bankruptcy court's Order and detailed in the record before us does not qualify as "gross misconduct tantamount to fraud, misrepresentation, overreaching or spoilation." *See id.* The bankruptcy court rested its equitable subordination ruling primarily on the Bronze Group's failure to conduct reasonable due diligence before advancing the loan to HIA and on the similarities between the Bronze Group loan's earnings structure and the promised returns for the limited partnerships. Failure to conduct due diligence was certainly bad business practice, and the loan's terms might indeed be questionable, but these factors do not amount to blatant fraud or other illegality at the expense of HIA's other creditors. [FN4] while HIA was most assuredly "undercapitalized" at the time of the Bronze Group loan, mere undercapitalization also falls short of the "gross misconduct" standard, especially where, as the bankruptcy court concluded, the Bronze Group's managers were unaware of HIA's financial straits until the entire scheme collapsed in 1990. There are, moreover, no allegations that the Bronze Group controlled HIA as an instrumentality or an alter ego.

*Hedged Investments, supra*, p. 1302.

There, as here, there was no allegation that the loan was made with the intent to deceive or harm anyone. "Lending money to a hedge fund" might not be prudent. Investing in viaticals might not be prudent, but "prudence" is not relevant. There is no allegation here that New Era Life Companies "had any culpable knowledge" about Tom Smith's allegedly fraudulent or illegal acts. Accordingly, all claims for equitable subordination under 11 U.S.C. §510 or otherwise must be dismissed.

**3.**   **Plaintiff Failed To State A Claim For Aiding And Abetting A Breach Of Fiduciary Duty.  Count II A Must Be Dismissed.**

In Count IIA of the Ancillary Complaint, Plaintiff claims that Tom Smith "and other officers" breached a fiduciary duty he or they owed to some unnamed entity, presumably Trade Partners, Inc., and that the New Era Companies aided and abetted Smith's violation.

Under Michigan law, a person who "knowingly joins a fiduciary in an enterprise where the personal interest of the latter is or may be antagonistic to his trust becomes jointly and severally liable with him for the profits of the organization."  *Goldman v. National Bank of Detroit,* 236 Mich. App. 517, 601 N.W.2d 126 (1999).  In *Goldman,* the court found that plaintiff failed to state a claim against defendant for aiding and abetting a breach of fiduciary duty where the complaint failed to allege that the defendant took affirmative steps – "participated in an enterprise" -- to assist the violation of fiduciary duties and failed to allege that defendant profited from the violation.  *Id.* at 522-523.  The complaint must contain allegations from which the court "might reasonably infer that [the defendant] knowingly participated in [another's] alleged breach of fiduciary duty."  *Id.* at 523.

A claim for aiding and abetting a breach of fiduciary duty containing averments of fraud must be pled with particularity.  *See Krieger v. Gast,* 2000 WL 288442 (W.D. Mich. 2000) ("Having concluded that Rule 9(b) applies to non-fraud claims grounded in fraud, …the court determined that …Counts I and II, which allege breach of fiduciary duty and aiding and abetting breach of fiduciary duty, are subject to Rule 9(b) even though [plaintiff] has expressly disclaimed any allegations of fraud.").

Plaintiff, however, has failed to state the nature of the alleged fiduciary duty – was it a duty of loyalty?  A duty of care?  A duty of honesty?  Of good faith and fair dealing?

Plaintiff has not stated how the fiduciary duty was breached or how Trade Partners or any LLC was harmed.

Also, there is no specificity as to fraud but only general conclusory statements. Clearly, the New Era Life Companies have not profited from Smith's breach of duty. The New Era Life Companies are owed over $10 million on real estate loans and $2.2 million invested in the viatical LLCs.

### 4. Plaintiff Failed To State A Claim For Aiding And Abetting Corporate Waste. Count II B Must Be Dismissed.

In Count IIB of the Ancillary Complaint, Plaintiff claims that the New Era Companies were "aiding and abetting corporate waste."

Directors and officers of a corporation may be liable to the corporation or its shareholders for mismanagement or waste of corporate assets. Use of corporate assets by an officer or director of a corporation, for the officer's or director's own benefit, may be a breach of a fiduciary duty owed to the corporation. The officers of Trade Partners, Inc. were Tom Smith and Christine Zmudka. They also were the members of TPI Management LLC which was the initial sole member of certain viatical LLCs. There is no allegation that any of the New Era Companies took affirmative steps to participate in Smith's enterprise. There is no allegation that any of the New Era Companies profited from Smith's alleged breach of the duty.

### 5. Plaintiff Has Failed To State A Claim For Conspiracy. Count II B (SIC) Must Be Dismissed.

In Count IIB (SIC), Plaintiff claims that the New Era Companies conspired with Trade Partners. A civil conspiracy is "an agreement, or preconceived plan, to do an unlawful act." *Bahr v. Miller Bros. Creamery,* 365 Mich. 415, 427; 112 N.W.2d 463 (1961). The elements of a cause of action for civil conspiracy in Michigan are (1) a concerted action (2) by a combination of two or more persons (3) to accomplish a criminal or unlawful purpose or a lawful

purpose by criminal or unlawful means, (4) causing damage to the plaintiff.  *Fenestra Inc. v. Gulf American Land Corp.*, 377 Mich. 565, 593; 141 N.W.2d 36 (1966); *Mays v. Three Rivers Rubber Corp.*, 135 Mich. App. 42, 48; 352 N.W.2d 339 (1984).  *Accord, United Rentals (North America, Inc.) v. Keizer*, 202 F. Supp. 727, 743 (W.D. Mich. 2002).

The Michigan Court of Appeals has stated:  "An allegation of conspiracy, standing alone, is not actionable."  *Magid v. Oak Park Racquet Club Assocs.*, 84 Mich. App. 522, 529; 269 N.W.2d 661 (1978) (citing *Roche v. Blair*, 305 Mich. 608, 614-616; 9 N.W.2d 861 (1943)).  In other words, the mere agreement to commit an unlawful act is not actionable; a civil conspiracy action is one for *damages* arising out of the acts committed pursuant to the conspiracy.  *Fenestra*, 377 Mich. at 593-594; *Krum v. Sheppard*, 255 F. Supp. 994, 998 (W.D. Mich. 1966), *aff'd*, 407 F.2d 490 (6th Cir. 1967); *Auto Workers' Temple Ass'n. v. Janson*, 227 Mich. 430, 433; 198 N.W. 992 (1924); 16 Am. Jr. 2d *Conspiracy* §49, at 267.

One who does an act that inadvertently furthers the tortious purpose of another is not acting in concert with the tortfeasor.  *Rosenberg v. Rosenberg Brothers Special Account*, 134 Mich. App. 342, 354; 351 N.W.2d 563 (1984).  Plaintiff does not allege that anyone at any of the New Era Life Companies <u>knew</u> at the time of any real estate loan that the loan proceeds would be misused.  Neither does Plaintiff allege that anyone at the New Era Life Companies <u>knew</u> at the time of any purchase of membership interest in any viatical LLC that the proceeds would be misused by the Escrow Agent or the LLC.

Neither a loan nor an investment is a criminal or an unlawful act.  The loans were to specific LLCs and the investments were in others and there is simply no allegation that any loan or investment damaged any LLC.

Plaintiff's Complaints are flawed because of their lack of specificity as required by Fed. R. Civ. P. 9(b).  What was the "fraudulent scheme"?  Plaintiff never says what it is or that anyone at any of the New Era Life Companies knew that Smith had made any material misrepresentation.

Certain of the New Era Life Companies agreed to make secured loans to real estate LLCs but there is no explanation of how such loans were unlawful.  On their face, the loan proceeds were to be used to acquire or refinance real estate loans or to pay other debt.  The proceeds of the real estate loans were used by the borrower real estate LLCs to acquire assets, NOT to purchase viaticals.

The proceeds of the purchase of membership interests in the viatical LLCs were loaned to TPI by the viatical LLCs.  Does Receiver claim that EVERY viatical transaction between TPI and the policyholder was fraudulent?  Or does Receiver claim that TPI's later sale of interests in each and every policy was fraudulent?  Or both?

6. **Plaintiff Has Failed To State A Claim For Violation Of "RICO", 18 U.S.C. § 1962 *et seq.*, Or For Aiding And Abetting A Violation Of 18 U.S.C. § 1962, *et seq.*  Count IIC Must Be Dismisssed.**

A. **Plaintiff's RICO Claim Against The New Era Companies And All Of Count II(C) Must be Dismissed.**

In Count IIC of its Complaint ("RICO"), Plaintiff states that "New Era's conduct is unlawful under the Racketeering and Corrupt Practices Act, 18 U.S.C. § 1962."  (Ex. 1, Ancillary Complaint ¶43.)  Plaintiff, however, fails to identify the section of the so-called RICO statute allegedly violated, who violated whatever section, how it was violated and what the New Era Life Companies' alleged role was in the alleged violation.  The Complaint leaves the New Era Life Companies guessing as to whether Plaintiff is asserting direct RICO liability (Complaint at ¶41, "New Era participated in the scheme"); conspiratorial RICO liability (Complaint at ¶42,

- 22 -

alleging that "New Era was a conspirator with Smith"); and/or aiding and abetting RICO liability (Complaint at ¶43, alleging that New Era aided and abetted Smith). Under any theory (direct, conspiracy, or aiding and abetting), however, Plaintiff fails to state a claim upon which relief can be granted.

> **B.**     **Plaintiff's Receiver, Gateway LLC And Greenville LLC Lack Standing To Raise A Claim For Violation Of The Civil RICO Statute.**

The civil RICO statute allows "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter [to] sue therefore in any appropriate United States district court." 18 U.S.C. §1964(c). Section 1962 provides in relevant part that:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign [*6] commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. (d) It shall be unlawful for any person to conspire to violate any of the provisions of this subsection (a), (b), or (c) of this section.

In *Anderson v. Ayling*, 2005 U.S. App. LEXIS 1152 (3rd Cir. 2005), the Third Circuit affirmed the District Court's dismissal of a civil RICO complaint for failure to state a claim on which relief may be granted because

> plaintiffs' allegations do not give rise to standing under § 1964(c), which requires a plaintiff to show (1) that he was injured (2) by reason of a violation of § 1962. Civil RICO "standing" is usually viewed as a 12(b)(6) question of stating an actionable claim, rather than as a 12(b)(1) question of subject matter jurisdiction. *See Maio v. Aetna, Inc., 221 F.3d 472, 482 n.7 (3d Cir. 2000).*

*Id.* at p. 4.

Here, the "he" is the Receiver for Trade Partners, Inc. and Debtors Gateway LLC and Greenville LLC.

"He" has failed to allege that Trade Partners, Inc. or Gateway LLC or Greenville LLC was injured by an act of one of the New Era Life Companies or that the act (whatever it is as the Ancillary Complaint is unclear) was a violation of 18 U.S.C. §1962.

"He" has failed to allege the injury that Trade Partners, Inc., Gateway LLC or Greenville LLC suffered.  And how could he allege, in good faith, that the secured real estate loans to Greenville LLC and Gateway LLC harmed those entities?  "He" can't.  Nor can Receiver allege that New Era Life Companies' investments in viatical LLCs harmed Trade Partners, Inc.  After all, the money invested was loaned by the viatical LLCs to Trade Partnres, Inc.

Making a loan to an LLC or investing in an LLC is not illegal *per se* or inherently wrongful.  A bad investment perhaps, but not a violation of federal law.

> In *Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268, 117 L. Ed. 2d 532, 112 S. Ct. 1311 (1992),* the Supreme Court interpreted § 1964(c) to mean that a RICO plaintiff [*7] must show that defendant's RICO violation was not only a "but for" cause of his injury, but also that it was the proximate cause.  Then, in *Beck v. Prupis, 529 U.S. 494, 507, 146 L. Ed. 2d 561, 120 S. Ct. 1608 (2000),* the Court held "that a person may not bring suit under § 1964(c) predicated on a violation of § 1962(d) for injuries caused by an overt act that is not an act of racketeering or otherwise unlawful under the statute."  the Court held that a plaintiff needed to allege that he or she was injured by "an act that is independently wrongful under RICO," *id.* at 505-06, and not merely by a non-racketeering act in furtherance of a broader RICO conspiracy.

*Anderson v. Ayling*, *supra* at p. 67.

A showing of injury, which has not been alleged here, requires "a concrete financial loss."  *Id.* at 13.  Here, no loss, much less a concrete loss, has been alleged.

The Receiver is not a representative of creditors of or of investors in Trade Partners, Inc., or of any LLC.  Rather, he is appointed to take control of the companies, liquidate

them, and distribute their assets according to law, under court supervision.  If "investors" into

Trade Partners, Inc. or the viatical LLCs have a claim, they, not the Receiver, should raise it.

### C.    Plaintiffs Fail To State A Claim For Direct RICO Liability Against The New Era Companies.

In order to state a civil claim for damages under RICO, Plaintiff must first allege

that one of the New Era Life Companies violated the substantive criminal provisions of the

RICO statute.  To do so, Plaintiff must plead facts showing: (1) that the defendant (2) through

the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5)

directly or indirectly invested in, or maintain an interest in, or participated in (6) an enterprise (7)

the activities of which affect interstate or foreign commerce.  18 U.S.C. §1962(a)-(c); *see also,*

*Paycom Billing Services, Inc. v. Payment Resources International, et al.,* 212 F.Supp. 2d 732

(W.D. Mich. 2002) (A complaint asserting a RICO claim must allege the "(1) conduct (2) of an

enterprise (3) through a pattern (4) of racketeering activity.").

Second, Plaintiff must allege and show that it was "injured in his business or

property by reason of a violation of section 1962."  18 U.S.C. 1964(c).  Plaintiff fails to properly

allege these elements and, as a result, the direct RICO claim must be dismissed.

### (i)    Plaintiffs Fail To State A Pattern Of Racketeering Activity.

To satisfy the 'pattern of racketeering' requirement, Plaintiff must plead at least

two related predicate acts that amount to or pose a threat of continuing criminal activity.  *See*

*Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n,* 176 F.3d 315, 322 (6th Cir.

1999).  Racketeering activity is defined as the commission of any one of the enumerated

"predicate acts" listed in section 1961(1) including, *inter alia*,:  murder, kidnapping, gambling,

arson, robbery, bribery, extortion, wire fraud, and mail fraud.  *See* 18 U.S.C. § 1961(1).  Isolated

or sporadic acts are not sufficient – there must be "continuity plus relationship which combines to produce a pattern." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 n.14 (1985).

The Complaint utterly fails to state the predicate acts of the New Era Companies, either directly or indirectly. Instead, Plaintiff alleges, only, in a conclusory fashion, that:

> Tom Smith has now admitted that he engaged in various criminal conduct constituting a pattern of racketeering activity, including obtaining insurance policies from Kelco whose value and characteristics were fraudulently documented, and marketing those policies to investors using telephone lines and the mails to transact interstate commerce, and further including establishing the real estate\viatical asset pools with falsely inflated valuations.

Complaint at ¶41. The New Era Companies are left to guess which of the over sixty specific predicate acts outlined in 18 USC §1961(1) they are being accused of committing or were somehow involved in.

It appears, although it is not clear, that Plaintiff may be asserting mail and wire fraud as the predicate acts. The Federal Rules of Civil Procedure, however, require that "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). To state a claim sounding in fraud as the predicate act in a RICO action, the Sixth Circuit requires "a plaintiff, at a minimum, allege the time, place, and content; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Advocacy Org. For Patients & Providers v. Auto Club Ins. Ass'n.*, 176 F.3d 315 (6th Cir. 1999). To properly allege mail or wire fraud, Plaintiff must plead facts demonstrating that: "(1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." *Central Distributors of Beer, Inc. v. Conn*, 5 F.3d 181, 184 (6th Cir. 1993), *cert denied*, 512 U.S. 1207, 114 S. Ct. 2678 (citation omitted). "In addition, the Sixth Circuit has held that 'the defendant must make a false

statement or omission of fact to the plaintiff to support the claim of wire fraud or mail fraud as a predicate act for a RICO claim' and the plaintiff must have relied upon those statements to [plaintiff's] detriment," and these additional elements also must be pled with particularity.  *Id.* at 184; *accord*, *Blount Financial Servs., Inc. v. Walter E. Heller Co.*, 819 F.2d 151, 152-153 (specifically holding that both of these allegations must be pleaded with particularity); *Gould, Inc. v. Mitsui Mining & Smelting Co., Ltd.,* 750 F. Supp. 838, 842-43 (again, both of these allegations must be pleaded with particularity).

Plaintiff has not come close to stating a mail or wire fraud cause of action against any of the New Era Companies or, for that matter, Smith.  Plaintiff's Complaint does not identify the time, place and content of the alleged fraud.  It does not plead with particularity any element of its RICO claim and, therefore, must be dismissed.  *Craighead v. E.F. Hutton & Co., Inc.,* 899 F.2d 485, 495 (6th Cir. 1990)("As plaintiffs have failed to allege any predicate acts, there can be no pattern of racketeering.").

        (ii)       **Plaintiffs fail to state the existence of an enterprise.**

Furthermore, Plaintiff's Complaint fails to allege an "enterprise" for RICO purposes.  An "enterprise" under RICO is defined as a "group of persons associated together for a common purpose of engaging in a course of conduct."  *Vandenbroeck, et al. v. Commonpoint Mortgage Co.,* 210 F.3d 696, 701 (6th Cir. 2000).   An association-in-fact enterprise can be proven by showing "(1) that the associated persons formed an ongoing organization, formal or informal; (2) that they functioned as a continuing unit; and (3) that the organization was separate from the pattern of racketeering activity in which it engaged."  *Id.*  Conclusory allegations that disparate parties were associated in fact are insufficient to sustain a RICO claim, absent allegations as to how the members were associated together in an "enterprise."  *Vandenbroek,*

210 F.3d at 701. "Simply conspiring to commit a fraud is not enough to trigger [RICO] if the parties are not organized in a fashion that would enable them to function as a racketeering organization for other purposes." *Id.* at 699 (noting that the "hallmark a RICO enterprise is its ability to exist apart from the pattern of wrongdoing."). In fact, the Supreme Court has held that to be held liable under RICO, "a defendant must have not only participated in the scheme, but must have also participated in the operation or management of the enterprise itself." *Id. citing Reeves v. Ernst & Young,* 507 U.S. 170, 183, 113 S.Ct. 1163 (1993).

Plaintiff has failed to plead the existence of a RICO enterprise in this case or any New Era Companies' alleged involvement in any such enterprise. Instead, Plaintiff conclusory alleges that Smith operated a criminal enterprise and that the New Era Companies participated in the scheme. Complaint at ¶41. Such allegations do not state how any New Era Company "participated in the operation or management" of this alleged enterprise. Therefore, Plaintiff's RICO count must be dismissed.

### D.     <u>Plaintiffs Fail to State a Claim for RICO Conspiracy.</u>

Section 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section. 18 U.S.C. 1962(d). Plaintiff fails to plead civil RICO conspiracy with requisite particularity. For purposes of Rule 9(b), "[I]t matters not whether a claim is grounded in fraud or some other legal theory." *Brege v. Lakes Shipping Co.,* 2004 U.S. Dist. LEXIS 26423, 8 (E.D. Mich. 2004). "Rather, if an allegation in a pleading contains an 'averment of fraud,' whether as part of the fraud claim or an element of a non-fraud claim, the 'averment of fraud' must be stated with the requisite particularity." *Id.* Plaintiff's entire civil RICO claim is presumptively predicated upon the predicate acts of mail fraud and wire fraud. As demonstrated above, these elements are not pled with the required particularity and, therefore, Plaintiff's conspiracy claim must be dismissed.

- 28 -

*Craighead,* 899 F.2d 495 ("Because plaintiffs have not adequately pleaded predicate acts, neither

a 'pattern of racketeering' or a §1962(d) conspiracy have been adequately pleaded as well.").

**E.  Plaintiffs Fail To State A Claim For Aiding And Abetting A RICO Violation.**

**(i)  There is no independent tort for aiding and abetting RICO liability.**

Plaintiff also alleges that one or more of the New Era Companies aided and

abetted Smith in his alleged RICO scheme.  This claim must be dismissed because no such

independent tort is recognized as a matter of law.  *Central Bank of Denver, N.A. v. First

Interstate Bank of Denver, N.A.,* 511 U.S. 164, 114 S.Ct. 1439 (1994).  In *Central Bank*, the

Court held that there was no aiding and abetting liability under section 10b of the Securities and

Exchange Act because Congress did not expressly impose such liability.  *Id.* at 185 ("In sum, it is

not plausible to interpret the statutory silence as tantamount to an implicit congressional intent to

impose §10(b) aiding and abetting liability.")  As the Court explained:

> …Congress has not enacted a general civil aiding and abetting statute –
> either for suits by the Government…or for suits by private parties.  Thus,
> when Congress enacts a statute under which a person may sue and recover
> damages from a private defendant for the defendant's violation of some
> statutory norm, there is no general presumption that the plaintiff may also
> sue aiders and abettors.  Congress instead has taken a statute-by-statute
> approach to civil aiding and abetting liability.

*Id.* at 182 (internal citations omitted).

As with the statute at issue in *Central Bank,* the civil RICO statute is completely

silent as to civil aiding and abetting liability.  *See generally,* 18 U.S.C. §1964.  Although the

Sixth Circuit has not addressed the viability of aiding and abetting liability in a civil RICO claim,

other Circuit Courts and District Courts have expressly held that in light of *Central Bank,* no

such liability is exists.[2]  *See Rolo v. City Investing Co. Liquidating Trust, et al.,* 155 F.3d 644, 657 (3rd Cir. 1998) (citing to *Central Bank*  and stating "[b]ecause the text of the Racketeer Influenced and Corrupt Organizations Act (RICO, 18 USCS §1961, et seq.) statute does not encompass a private cause of action for aiding and abetting a RICO violation, courts have no authority to imply one."); *In the Matter of Lake States Commodities, Inc.,* 936 F. Supp. 1461, 1475 (N.D. Ill., 1996) (7th Cir.) (Citing to  *Central Bank* and holding that claim for civil liability for aiding and abetting RICO violation "must be dismissed because no such cause of action exists under RICO."); *Pennsylvania Assoc. of Edward Heirs v. Rightenour, et. al.,* 235 F.3d 839, 843 (3rd Cir., 2000) (Citing to *Central Bank* and holding that "[a] private cause of action for aiding and abetting a civil violation of the Racketeer Influenced and Corrupt Organizations Act, 18 USCS §1961 et seq., cannot survive contrary U.S. Supreme Court precedent.").

Because RICO does not directly provide for a private cause of action for aiding and abetting a RICO violation, under the clear dictates of *Central Bank,* Count IIC must be dismissed to the extent it asserts aiding and abetting liability.

### (ii)     Plaintiffs fail to state a claim for aiding and abetting a RICO violation.

Even if this Court did recognize aiding and abetting liability for a civil RICO claim, Plaintiff has failed to properly plead this as a cause of action.  "In order to find a

---

[2] In *General Motors Corp., et al. v. de Arriortua, et al.,* 948 F.Supp. 670, 684 (E.D. Mich., 1996), because the court concluded that plaintiffs had properly pled a claim for RICO and RICO conspiracy, the court declined to address the viability of civil liability for aiding and abetting a RICO violation in light of *Central Bank.*  In an unpublished decision from the Western District of Michigan, the court noted that "one who aids and abets two predicate acts can be civilly liable under RICO."  *See Van Betulius, et al. v. Hanna, et. al.,* 1996 U.S. Dist. LEXIS 19954, *13 (W.D. Mich. 1996).  That unpublished decision, which relied on non-Sixth Circuit case law, is clearly erroneous under the dictates of *Central Bank* and must not be considered by this court as precedent for the existence of a cause of action for aiding and abetting RICO liability.

defendant liable for aiding and abetting a predicate act under RICO, the plaintiff must prove (1) that the substantive act has been committed, and (2) that the defendant alleged to have aided and abetted the act knew of the commission of the act and acted with intent to facilitate it.  *Van Betulius v. Hanna,* 1996 U.S. Dist. LEXIS 19954, *13 (W.D. Mich. 1996) *quoting Jaquar Cars, Inc. v. Royal Oaks Motor Car Co.,* 46 F.3d 258, 270 (3rd Cir. 1995).   "Mere negative acquiescence" is not enough to establish aiding and abetting civil liability under RICO.  *Id. citing Armco Indus. Credit Corp. v. SLT Warehouse Co.,* 782 F.2d 475, 485 (5th Cir. 1986).   "To be an aider and abetter the defendant must have shared in the criminal intent of the principals."  *Id.*

Plaintiff fails to properly plead aiding and abetting liability in this case.   As discussed, Plaintiff fails to properly plead a substantive violation of RICO.  Plaintiff's aiding and abetting liability claim is predicated upon allegations of fraud, yet such fraud is not pled with the requisite particularity.  *Brege,* 2004 U.S. Dist. LEXIS *8 ("If an allegation in a pleading contains an 'averment of fraud,' whether as part of the fraud claim or an element of a non-fraud claim, the 'averment of fraud' must be stated with the requisite particularity.")

### 7.     Plaintiff Failed To State A Claim To Avoid A Fraudulent Transfer Under MCL § 566.31 *et seq.*  Count IID Must Be Dismissed.

In Count IID of the Ancillary Complaint, in conclusory fashion and without the specificity required by Fed. R. Civ. P. 9(b), the Receiver claims that "MIP payments" (whatever they are) and payments "that occurred in the Trade Ark transactions should be avoided based on state Fraudulent transfer statutes".   Assuming that Michigan Law applies, the Receiver further fails to properly plead a violation of the Michigan Fraudulent Transfer Act ("MFTA"), MCL 566.31. *et seq.*  To plead a cause of action under MFTA, a plaintiff must show that a debtor made a transfer of its property or incurred an obligation "(a) with the actual intent to hinder, delay, or defraud any creditor of the debtor or (b) without receiving a reasonably equivalent

value in exchange for the transfer or obligation, and the debtor either (1) was engaged or about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (2) intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due."  MCL 566.34.  Allegations of fraudulent transfers are not presumed but must be pled with particularity.  *Geisert v. Corriveau,* 140 F.Supp. 29 (E.D. Mich. 1956) ("As respects right to set aside a fraudulent conveyance, fraud must not only be proven, but must be particularly alleged.").

Plaintiff does not allege that any LLC was insolvent at the time of any real estate loan or membership interest purchase.  Rather, he claims in purely conclusory terms that "Trade Partners" was insolvent.  To Plaintiff, "Trade Partners" is a specific entity and has "related entities."  (Ex. 1, Ancillary Complaint, ¶1.)  The "related entities" are assumed by the New Era Companies to be the viatical LLCs managed by TPI Management, LLC, whose members were Smith and Zmudka, and the real estate LLCs.  There has been no substantive consolidation of these LLCs with Trade Partners, Inc.  Nor could there be as it would be inequitable to the New Era Life Companies to do so as the value of their claims could be diluted substantially and the accounting for the assets and debts of the LLCs is not hopelessly entangled with Trade Partners Inc. or the other LLCs.

Receiver must also, at the very least, identify the specific transfer sought to be avoided, which is another fatal flaw in the Ancillary Complaint.  What property did the real estate LLCs transfer to which of the New Era Companies?  In connection with the real estate loans, the answer is either an interest in real estate or the return on the investment in an LLC. There were, however, numerous transactions.  Which ones does Receiver seek to avoid?  And the

documents attached to the Claims prove that the real estate LLCs received the money which was loaned.  Thus, the LLCs received reasonably equivalent value.  Further, the viatical LLCs gave the New Era Companies "membership interests" in exchange for cash, which was reasonably equivalent value.  Because the Receiver does not allege other than in conclusory terms lack of reasonably equivalent value, and can not prove any facts to establish a fraudulent transfer, this Count must be dismissed.

### 8. Greenville LLC And Gateway LLC Fail To State A Claim For "Deepending Insolvency."

Greenville LLC and Gateway LLC both commenced adversary proceedings. Their Complaints (Exs. 2 and 3) both incorporate by reference the Recevier's Ancillary Complaint.  (Ex. 2, ¶¶5-6; Ex. 3, ¶¶7-8.)  Greenville LLC sued only New Era Life because New Era Life is the only one of the New Era Companies asserting a claim against Greenville. Gateway LLC sued New Era Life, PALIC and New Era Midwest because they all hold secured claims against Gateway LLC.

Both Debtors' Complaints seek "Disallowance of Claim" and determination of amount under 11 U.S.C. § 506, "Recharacterization of Debt to Equity," "Equitable Subordination," and damages for "Deepening Insolvency."  All but "deepening insolvency" are dealt with above.

Greenville LLC and Gateway Center LLC are single asset LLCs.  Each owned real estate held for investment; Greenville a warehouse in Greenville, Michigan, and Gateway, undeveloped real property in Arizona.

On February 13, 2002, New Era Life, PALIC and New Era Midwest made loans to Gateway LLC aggregating $4,000,000.  The loans were evidenced by Secured Promissory Notes to New Era Life for $2,000,000; to New Era Midwest for $1,000,000; and to PALIC for

- 33 -

$1,000,000, each with a maturity date of February 13, 2005.  Gateway LLC granted a Deed of Trust to each lender to secure repayment of the loans.  Each Deed of Trust was recorded with the Pinal County, Arizona, Recorder on February 15, 2002.

On April 12, 2002, New Era Life loaned $1,500,000 to Greenville LLC, evidenced by a Promissory Note in like amount with a maturity date of April 1, 2005.  Greenville LLC granted a mortgage to New Era Life to secure repayment of the Note.  The mortgage was recorded on April 24, 2002, in Montcalm County, Michigan.

Each Debtor alleges in conclusory fashion that the New Era Companies engaged in conduct associated with the phrase "deepening insolvency."

> "Deepening insolvency" refers to the "fraudulent prolongation of a corporation's life beyond insolvency," resulting in damage to the corporation caused by increased debt.

*In re Global Service Group, LLC*, 316 B.R. 451, 456 (Bankr. S.D. N.Y. 2004).  In *Global*, the chapter 7 trustee sued Atlantic Bank alleging that Atlantic Bank made loans to the debtor while debtor was insolvent, that the Bank knew or should have known that the debtor would be unable to repay the loans, that the loans were secured by the pledge of the assets of the principals of the borrower, that other creditors extended credit based on Atlantic's willingness to extend credit, and that the loans allowed by the debtor "to prolong its corporate existence and incur increased debt which would have been avoided without the Atlantic Bank loans."  *Id.*, pp. 455-456.  Atlantic Bank moved to dismiss.  The court held that the complaint failed to state a claim for "deepening insolvency" and dismissed all such claims.

## A.    There Is No Independent Tort For "Deepening Insolvency."

There is no reported Sixth Circuit or Michigan case holding that "deepending insolvency" is an independent tort.  "Deepening insolvency," however, has been accepted by some courts as a tort when "an insolvent corporation suffers a distinct and compensable injury

when it continues to operate and incur more debt" and treated it as an independent cause of action. *Global*, at p. 457. Others have treated it only as a theory of damages. *Id*. And yet others have rejected the theory outright. *Global,* at p. 458. Because neither the tort or damages theory is recognized as an independent tort in this state or circuit, the claim for "deepening insolvency" must be dismissed.

      **B.**    **If "Deepening Insolvency" Is A Tort, Plaintiffs Have Failed To State Such A Claim.**

Assuming that the Court may, at this stage, determine to consider that there is such a cause of action, the Complaint totally fails to allege necessary elements of such a claim.

Greenville LLC and Gateway LLC were both managed by their sole member, TPI Management LLC, whose members were Smith and Zmudka. Neither Greenville's Complaint nor Gateway's alleges that TPI Management LLC or its members breached any duty owed to the Debtors or to the creditors of the Debtors. Neither Complaint alleges that Greenville LLC or Gateway LLC were insolvent at the times of the New Era Life Companies' loans to them.

Neither Complaint alleges that Smith or Zmudka acted in bad faith or with fraudulent intent with respect to Greenville LLC or Gateway LLC. While Smith and Zmudka may have breached duties owed to Trade Partners, Inc. or that entity's creditors, there is no allegation that such breach extends to the separate entities of Greenville LLC and Gateway LLC.

Neither Complaint alleges that the New Era Life Companies' loans to the Debtors were the proximate cause of damage to Greenville LLC or Gateway LLC or their creditors. There are no facts alleged suggesting that the New Era Life Companies could or should have foreseen that secured loans to these single-asset LLCs would allow Smith or Zmudka to misappropriate or misuse the proceeds. These are no allegations that Greenville LLC, Gateway LLC, Smith or Zmudka actually used the loan proceeds in an improper or illegal manner.

The allegations against the lender in *Global* were not sufficient to state a claim. Here, Plaintiff's averments don't even reach the level of those made by the *Global* trustee. Moreover, Greenville LLC and Gateway LLC didn't "operate." Rather, they owned real estate for investment purposes. Finally, there is no allegation that Greenville LLC or Gateway LLC incurred increased debt after the New Era loans. The "deepening insolvency" count, if that is what it is, must be dismissed.

### 9.     The Doctrine Of *In Pari Delicto* Bars All Of The Claims Of Debtors Greenville LLC And Gateway LLC.

Greenville LLC and Gateway LLC are chapter 11 debtors. Each was managed by TPI Management LLC, whose members were Tom Smith and Christine Zmudka. Before filing chapter 11 cases, they were in a federal court receivership. They have adopted the Ancillary Complaint.

"Trade Partners was a fraud scheme that was doomed to collapse." (Ex. 1, ¶20.)

To the extent that Greenville LLC and Gateway LLC admit or allege that they were involved in or the instrumentalities of the "fraud," then the doctrine of *in pari delicto* bars their claims.

> "*In pari delicto* refers to the plaintiff's participation in the same wrongdoing as the defendant." *Bubis v. Blanton*, 885 F.2d 317, 321 (6th Cir. 1989) (citing *Memorex Corp. v International Business Machines Corp.*, 555 F.2d 1379, 1382 (9th Cir. 1977)). [HN3] The doctrine is premised upon the equitable principle that "no Court will lend its aid to a man who founds his cause of action upon an immoral or illegal act." *Jones v. Hyatt Legal servs. (In re Dow), 132 B.R. 853, 860 (Bankr. S.D. Ohio 1991).*

*In re Dublin Securities, Inc.*, 133 F.3d 377 (6th Cir. 1997) and 1998 U.S. App. Lexis 9336 (6th Cir. 1998).

Accordingly, the Complaints of Debtors Greenville LLC and Gateway LLC must be dismissed.

10.   **Plaintiff Makes No Allegations Regarding New Era Enterprises, Inc. And Accordingly The Complaint Must Be Dismissed As To This Defendant.**

The only <u>specific</u> allegations regarding New Era Enterprises, Inc. ("Enterprises") in the Ancillary Complaint are in paragraphs 2, 5 and 8.  These are that Enterprises is a Texas corporation with its principal place of business there (which is not true – it is a Nevada corporation) (¶2); Enterprises "interpled certain annuities" into the Clerk of this Court (¶5); and Enterprises is the parent of New Era Life, PALIC and Midwest (¶8).

The Court, however, may take judicial notice of the pleadings filed by Enterprises.  In two complaints (Case No. 1:03CV844 and Case No. 1:03CV873), Enterprises acknowledge that it was liable on certain promissory ntoes, that third parties (Peter Sturrus in Case No. 1:03CV844 and Edward and Edwin Kacos in Case No. 1:03CV873) and the Receiver both claimed to be entitled to payment of the notes and that Enterprises wanted to pay the notes into court and to let the third parties and the Receiver litigate the issue of who was entitled to payment.  To date, Enterprises has paid $1,600,000 into the Clerk of the Court and intends within the next month to pay another $400,000, all in accordance with settlement agreements approved by this Court.  Enterprises has not filed any claim in the Receivership or in the Chapter 11 cases of Greenville LLC and Gateway LLC.

Accordingly, no claim having been made against Enterprises, an order should issue dismissing the Ancillary complaint as against Enterprises, only.

11.   **Plaintiff Has Not Pled Facts Entitling Plaintiff To Treat New Era Life, PALIC, Enterprises Or Midwest As A Single Entity.**

In the Ancillary Complaint, Plaintiff alleges that Enterprises, New Era Life, Midwest and PALIC are all operated from the "same Houston, Texas, office by the same management team."  (Ex. 1, Ancillary Complaint, ¶8.)  This is not sufficient to pierce the

- 37 -

corporate veil, substantively consolidate or to treat the New Era Companies as alter egos of each other.

> ### 12.  Plaintiff Has Not Pled Any Facts Entitling Him To Substantively Consolidate Trade Partners, Inc. With Gateway LLC, Greenville LLC, Music Valley LLC Or Any Other Entity.

Plaintiff alleges that he is the Receiver "for Trade Partners, Inc. and related entities." (Ex. 1, ¶13.) He never identifies the "related entities." In any event, Plaintiff has not alleged any facts showing possible entitlement to having Trade Partners, Inc. substantively consolidated with other entities in which Tom Smith was involved or that Greenville LLC, Gateway LLC, or Music Valley LLC are the alter egos of TPI or Smith or that the "corporate veil of the LLCs should be pierced."

In fact, the facts before the Court, as contained in the claims filed by the various New Era Life Companies, establish that Greenville LLC, Gateway LLC and Music Valley LLC are all separate entities established to acquire real estate for investment purposes. There is no allegation that Greenville LLC or Gateway LLC or Music Valley LLC are alter egos of each other or of Trade Partners.

## <u>CONCLUSION</u>

Plaintiffs, Receiver, Gateway LLC and Greenville LLC, have failed to state any valid objection or claim for affirmative relief and, accordingly, the Ancillary Complaint and the Adversary Complaints must be dismissed.

Respectfully submitted,

_____/s/ Hannah J. Mufson_____
DAVID MURPHY (P22980)
KAY STANDRIDGE KRESS (P39339)
MARY DEON (P63019)
HANNAH MUFSON (P67171)
PEPPER HAMILTON LLP
100 Renaissance Center, 36th Floor
Detroit, MI 48243-1157
(313) 259-7110
Attorneys for Claimants-Ancillary Defendants

Dated:  March 15, 2005

DT: #289969 v1 (67QP01!.DOC) 127760-2

- 39 -