UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL J. QUILLING,

        Plaintiff,

                                              File No.  1:03-CV-236

v.

                                              HON. ROBERT HOLMES BELL

TRADE PARTNERS, INC., et al.,

        Defendants.
                                       /

## **O P I N I O N**

In a Report and Recommendation dated May 23, 2005 (Docket # 1017), Magistrate Judge Ellen S. Carmody recommended that the Receiver's Motion to Approve Sales Procedures and to Authorize Sale of Policies Free and Clear of Interests (Docket # 834) be granted.

Objections to the Report and Recommendation have been filed by Philadelphia American Life Insurance Company ("PALIC") and New Era Life Insurance Company ("New Era") (Docket # 1022), Gerald Abraham ("Abraham") (Docket # 1024), and Macatawa Bank Corporation ("Macatawa Bank") (Docket # 1027) (collectively referred to as "the Objectors").  This Court is required to make a *de novo* review upon the record of those portions of the R&R to which specific written objection has been made.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

The issues raised by the objections to the R&R include the adequacy of the notice of the sale, the adequacy sales price, the adequacy of the Receiver's marketing efforts, the adequacy of the evidence the Receiver relied on to support his contention that an immediate sale was in the best interest of the estate, and whether the Court should await a decision by the Sixth Circuit on an interlocutory appeal of *Liberte Capital Group v. Capwill*, 321 F. Supp.2d 899 (N.D. Ohio 2004), on the issue of pro rata distributions.

None of these objections are new. They were raised in the hearings before the Magistrate Judge, and were addressed in the R&R. Notice of the proposed sale was adequate. There is no dispute that additional marketing could have been done, that the proposed sales price is lower than the two actuarial valuations of the portfolio, that a higher value could probably be obtained if the portfolio continued to be managed over an extended period of time, and that the evidence regarding the wishes of the class members for an immediate distribution of reduced funds over a delayed distribution of greater funds was unscientific and anecdotal in nature. The Magistrate Judge acknowledged as much in her Report and Recommendation. The objections really amount to a question of whether the evidence relied on was adequate to support the Receiver's recommendation that this sale is in the best interests of the investors. Upon *de novo* review this Court is satisfied that it was.

A receiver has the powers and duties directly stated within a court's order and any implied powers clearly and reasonably necessary to meet his duties. *Liberte Capital Group, LLC v. Capwill*, 99 Fed.Appx. 627, 633 (6th Cir. 2004) (unpublished) (citing *Booth v. Clark*,

58 U.S. 322, 17 How. 322, 15 L.Ed. 164 (1854); 75 C.J.S. Receivers § 147). A receiver acts as an officer of the court, *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 98 (2nd 1988), and owes a fiduciary duty both to the court and to any person interested in the estate of which he has been made a receiver. *See Sovereign Bank v. Schwab*, No. 03-4625, — F.3d —, 2005 WL 1579503, *3 (3rd Cir. July 6, 2005); *County of Oakland by Kuhn v. City of Detroit*, 784 F. Supp. 1275, 1286 (E.D. Mich. 1992).

On April 15, 2003, this Court appointed the Receiver to take possession of the Receivership Assets, and to take such actions as may be necessary for the collection, preservation, maintenance, and operation of the Receivership Assets. (Docket # 6). This Court did not attempt to advise the Receiver on the details of how he should carry out his obligations. Rather, this Court intentionally granted the Receiver broad authority to use his discretion in carrying out these obligations, so long as that he exercised that discretion consistent with his fiduciary duties and obligations. Because this Court has granted the Receiver broad discretion to act in the best interests of the investor, this Court also accords some deference to the Receiver's recommendations and will not second guess every recommendation or decision of the Receiver absent a suggestion that the Receiver has acted unreasonably or in bad faith.

None of the objections in this case tend to show that the Receiver acted unreasonably or in bad faith. There is no evidence in the record to suggest that the Receiver did not market the portfolio consistent with his fiduciary duties. The evidence was uncontroverted that the

market for viaticals is small, and that given the history of fraud associated with this portfolio, the market was even more restricted. The Receiver has been attempting to sell the AIDS portfolio since May 12, 2004 (Docket # 545) and the Non-Aids policies since August 8, 2004. (Docket # 643). Confidentiality agreements were executed with 20 potential purchasers who wanted to examine the details of the Portfolio. (Ex. 14 and 15).

The proposed sale price of $43 million is significantly less than the actuarial valuations of the portfolios which placed the value at $49 million and $59 million when a 20% discount rate was applied. (Ex. 10, 11). Nevertheless, although actuarial information is helpful in ascertaining value, the market ultimately determines what the actual value is. In this case the only cash offer came in at $43 million. There is no evidence that there were any willing buyers at a higher price or that there would have been had the portfolio been marketed differently.

The Objectors' most significant concern seems to be with the Receivers' determination that an immediate sale, even at a lesser value, was in the best interests of the investors. The Objectors raise a concern that this determination was based on hearsay and on a poll that did not meet scientific standards. (Ex. 31 & 32). The Objectors note that only three percent of the investors were polled, and the survey was not conducted by individuals who were trained in polling techniques.

The Court observes that the Receiver's determination that an immediate cash sale was in the best interests of the investors was not based simply on the investor preferences

4

reflected in the survey. The Receiver based his determination on his knowledge of the class of investors, including their age, their economic status, and their concerns regarding additional risk. The Receiver has had numerous contacts with class members, not all of which were committed to paper or statistics. Some of the Receiver's knowledge is undoubtedly based upon hearsay and anecdotal evidence. Nevertheless, there is no indication that the Receiver's conclusions about the investors as a class are unfounded. Moreover, there is no requirement that a Receiver undertake a scientific study to determine the various interests of the class he is protecting. In this case, the poll and the summary of investor contacts (Ex. 39), simply tended to confirm what the Receiver already knew about the investors.

The Objectors understandably would prefer that the portfolio be held rather than sold at this time. In a class as large as the one in this case it comes as no surprise that some members of the class have different opinions and different interests. The surprise is that there were so few objectors. The Court is satisfied that in this case the Receiver has not acted unreasonably in concluding that an immediate sale of the portfolio to Universal Settlements International, Inc. is in the best interest of the investor body as a whole.

The Objectors also contend that a pro rata distribution of the proceeds of the viatical portfolio is inappropriate and that this Court should defer its sale decision until after the Sixth Circuit has ruled on the interlocutory appeal of the sale order in *Liberte Capital Group v. Capwill*, 321 F. Supp.2d 899 (N.D. Ohio 2004). The Objectors are concerned that once the

5

portfolio is sold, the Court will have to make any distribution to the investors on a pro-rata basis and will no longer be able to restore the individual investors to the policy interests they originally purchased.

The district court in *Liberte Capital* adopted a *pro rata* approach for distribution of receivership funds to investors in a viatical life insurance investment program because some investors were matched to particular policies, while others were not matched to a particular policy, or were matched to policies which were permitted to lapse or to be rescinded. The court determined that a *pro rata* distribution which placed all investors on an equal footing would minimize the damages to the extent possible and would be most equitable. 321 F. Supp.2d at 900.

This Court is satisfied that a *pro rata* distribution is also appropriate in this case and this Court has no reason to believe that the Sixth Circuit will reject the *pro rata* approach adopted in *Liberte Capital*. Accordingly, the sale of this portfolio will not be delayed pending a resolution of the *Liberte Capital* appeal.

For the reasons stated herein, the Court will approve and adopt the Magistrate Judges' Report and Recommendation and will grant the Receiver's motion to approve sale procedures and authorize the sale of policies free and clear of interests.

An order consistent with this opinion will be entered.


Date:   July 19, 2005            /s/ Robert Holmes Bell
                                 ROBERT HOLMES BELL
                                 CHIEF UNITED STATES DISTRICT JUDGE