UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MICHAEL J. QUILLING,

           Plaintiff,                              Hon. Robert Holmes Bell

v.                                        Case No. 1:03-CV-236

TRADE PARTNERS, INC.,

           Defendants.
_____/


## REPORT AND RECOMMENDATION

This matter is before the Court on the Receiver's Motion to Exclude Expert Opinion Testimony, (dkt. #943), the Receiver's Motion for Summary Judgment, (dkt. #1033), and Columbian Mutual Life Insurance Company's Motion for Summary Judgment, (dkt. #1041). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that the motion to exclude be **granted**; the Receiver's motion for summary judgment be **denied**; and Columbian's motion for summary judgment be **granted**.


## BACKGROUND

On October 9, 2003, the Receiver in this matter moved the Court to issue an order to show cause to Columbian Mutual Life Insurance Company. (Dkt. #228). Asserting that Columbian had failed to pay death benefits in the amount required under an insurance contract, the Receiver requested that Columbian be required to show cause why it should not be ordered to pay to the Receiver the disputed amount. *Id.* On November 7, 2003, the Court granted the Receiver's motion and ordered

Columbian to show cause why the Court should not order the relief requested in the Receiver's motion. (Dkt. #290).

The parties thereafter submitted pleadings addressing the merits of the Receiver's request, as well as additional issues asserted by Columbian regarding personal jurisdiction and whether the Court could properly resolve the issues raised by the Receiver's request through a show cause proceeding. (Dkt. #325, 347, 374, 427). The Court determined that it could properly exercise personal jurisdiction over Columbian. (Dkt. #458). With respect to Columbian's concerns regarding the nature of the show cause proceedings, the Court concluded that it could properly employ a summary proceeding to resolve the underlying dispute, but ordered that such proceeding be conducted pursuant to procedures which "comport with and provide Columbian with procedural and substantive due process." *Id.*

Accordingly, the Court entered a scheduling order by which the parties would prepare this matter for resolution. (Dkt. #647). The Court further determined that New York law applied to the resolution of the Receiver's claim against Columbian. (Dkt. #801). The parties thereafter participated in discovery, after which they jointly submitted "stipulations of fact" identifying those facts which the parties deem "admitted and conclusively established." (Dkt. #1030). The parties further assert there do not exist any relevant facts in dispute. (Dkt. #1033, 1041). Accordingly, the parties' competing motions for summary judgment are ready for resolution. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

I.        **Motion to Exclude Expert Opinion**

Columbian has employed an expert witness in this matter, James Michael Pickens, who purports to be an expert on "the meaning and application of policy provisions based on insurance

practices and customs."  Columbian seeks the admission of Mr. Pickens' expert opinions in resolving

the issues raised by the parties' motions for summary judgment.

Federal Rule of Evidence 702 provides that a witness "qualified as an expert by

knowledge, skill, experience, training, or education" may offer opinion testimony if such "will assist the

trier of fact to understand the evidence or to determine a fact in issue."  As the parties have stipulated

to the facts necessary to the resolution of their motions for summary judgment, expert testimony is not

needed to "determine a fact in issue."  The Court further finds that expert opinion is not necessary to

understand the stipulated facts in this matter.  Accordingly, the Receiver's motion to exclude Mr.

Pickens' opinions is **granted**.


**II.        The Parties' Motions for Summary Judgment**

As noted above, the parties have stipulated to the facts relevant in this matter.  (Dkt.

#1030).  Those stipulated facts are incorporated herein by reference and will be detailed as necessary to

the Court's analysis.  Nonetheless, a brief discussion of the relevant events and the issues presented by

the parties' motions is appropriate.

On February 11, 1985, Columbian issued a policy insuring the life of Morris Krevitz.

(Dkt. #1030 at ¶ 1).  This policy provided a death benefit of one million dollars.  *Id.*  On March 3, 1999,

Trade Partners purchased the ownership and beneficiary rights to the policy.  *Id.* at ¶¶ 2-6.  With respect

to the timely payment of premiums, the policy provided for a 31-day grace period.  *Id.* at ¶¶ 16, 36, 43,

53.  Thus, a premium was considered timely if paid within 31 days of the relevant due date.  *Id.*

A policy premium in the amount of $33,431.59 was due on January 25, 2003.  *Id.* at ¶ 43.

Taking into account the 31-day grace period, this particular premium payment would be considered

timely if paid by February 25, 2003.  *Id.*  Trade Partners subsequently issued check number 34104 (drawn on an account at Irwin Union Bank) dated February 13, 2003, in the full amount of the premium then due.  *Id.* at ¶ 44.  This check was received at HSBC Bank on February 18, 2003, at which point it was deposited into an account owned by Columbian.  *Id.*

On February 20, 2003, HSBC Bank presented the check to Irwin Union Bank for payment.  *Id.* at ¶ 45.  The check was returned to HSBC Bank the following day "unpaid for insufficient funds."  *Id.*  Whenever a check deposited into Columbian's account at HSBC Bank is returned unpaid for insufficient funds, it the policy of HSBC Bank to "automatically [make] a second attempt to clear the check."  *Id.* at ¶ 46.  HSBC Bank notifies Columbian of a returned check "only after the second attempt to collect fails."  *Id.*

On February 25, 2003, HSBC Bank redeposited the check, but it was again returned "unpaid for insufficient funds" on February 28, 2003.  *Id.* at ¶ 45.  On March 3, 2003, HSBC Bank mailed to Columbian a notification that the check provided by Trade Partners had been returned unpaid for insufficient funds.  *Id.* at ¶ 47.  On March 4, 2003, Morris Krevitz passed away.  *Id.* at ¶ 51.  On or about March 6, 2003, Columbian received the notification from HSBC Bank that the check provided by Trade Partners had been returned unpaid for insufficient funds.  *Id.* at ¶ 47.

With respect to the timely payment of premiums, the policy provided that, absent an exception, if a scheduled premium payment "is not paid within the grace period, the Policy terminates as of the date the premium was due."  *Id.* at ¶ 53.  As detailed below, the policy was terminated following Trade Partners' failure to timely pay the January 25, 2003 premium, at which point the policy's then existing value was used to purchase a term policy with a death benefit of $267,308.  This reduced benefits policy was in effect when Mr. Kravitz passed away on March 4, 2003.  *Id.*

Columbian paid benefits to Trade Partners pursuant to this reduced benefits policy. *Id.* at ¶¶ 54-66. The Receiver asserts that, despite Trade Partners' failure to timely pay the January 25, 2003 policy premium, Columbian was obligated to pay death benefits to Trade Partners in the amount of one million dollars. Columbian responds that the policy was properly terminated for non-payment and, furthermore, that the reduction in death benefits was consistent with the policy's express terms.

> A.   Submission by Trade Partners of a Dishonored Check did not Constitute Absolute and Unconditional Acceptance of the Premium Payment

The Receiver asserts that "Columbian Mutual accepted Trade Partners check #34104 as an absolute and unconditional payment of the January 25, 2003 premium, meaning that the Policy was in force on the March 4, 2003 date of the insured's death despite the subsequent dishonor of the check." For the reasons articulated below, the Court disagrees.

Pursuant to New York law the general rule is that a check offered in payment of an obligation constitutes only a conditional payment thereof and if the check is not honored on presentment the obligation is not discharged. *See* N.Y. Uniform Commercial Code § 3-802; *Meiselman v. McDonald's Restaurants*, 759 N.Y.S.2d 506, 507 (N.Y. Sup. Ct. 2003) ("[i]t is well settled that a check is merely a conditional payment which fails to satisfy the underlying obligation upon dishonor"); *Burnett v. Vance*, 483 N.Y.S.2d 595, 597 (N.Y. Sup. Ct. 1984) ("if the check is not honored on presentment the original indebtedness for which it is given is not discharged").

As the Receiver correctly observes, the parties may reject this general rule and agree instead that payment by check constitutes an unconditional satisfaction of an obligation - regardless of whether the check is subsequently honored or not. *See* N.Y. Uniform Commercial Code § 3-802. The Receiver asserts that Columbian agreed to accept payment by check as an unconditional satisfaction of

Trade Partners' January 25, 2003 premium payment obligation.  The existence of such an agreement "may be established by proof of an express agreement or by circumstances from which an agreement or understanding may be implied."  *Burnett*, 483 N.Y.S.2d at 597.  There is no evidence of an express agreement by the parties that Trade Partners' premium payment obligation would be unconditionally satisfied by the mere submission of a check.  (Dkt. #1030 at ¶ 50).  The Receiver, however, points to several factors which he asserts evidences an implicit agreement of such between the parties.

First, the Receiver asserts that the policy failed to expressly state that submission of a check with respect to the payment of premiums constituted only a conditional payment thereof.  As noted above, the general rule - applicable unless the parties otherwise agree - is that a check constitutes only a conditional payment.  The Court finds no relevance in Columbian's failure to expressly state in the policy the generally applicable rule.  In other words, while Columbian can reasonably be expected to expressly identify instances in which it seeks to deviate from general rules and practices, the Court fails to discern how its failure to expressly articulate the rule generally applicable in this instance evidences an intent to deviate from that general rule.

Next, the Receiver asserts that the "issuance of a receipt showing payment" indicates that the recipient accepted a check as payment without condition.  While the Court agrees that the issuance of a receipt *may* indicate unconditional satisfaction of a payment obligation, the parties have stipulated that "Columbian did *not* issue to Trade Partners a receipt for check # 34104 or for any particular premium payment received from Trade Partners."  (Dkt. #1030 at ¶ 49) (emphasis added).  Thus, the Court fails to discern how this factor advances the Receiver's position.

The Receiver also asserts that "treatment of and accounting for the payment by check as if it were made in cash" indicates that the recipient accepted the check as unconditional satisfaction of

a payment obligation. The check at issue was received by HSBC Bank on February 18, 2003, after which it was deposited into an account owned by Columbian. (Dkt. #1030 at ¶ 44). Columbian was notified (by HSBC Bank) of the receipt of this check on February 19, 2003. *Id.* At some point subsequent to February 24, 2003, Columbian issued to Trade Partners a "Policy Report" indicating that a premium payment had been received on February 19, 2003. (Dkt. #1030 at ¶ 49; Dkt. #1030, Exhibit P). According to the Receiver, the issuance of this "Policy Report" establishes that Columbian treated the check as if it were cash.

First, the Policy Report does not indicate that the check was accepted unconditionally. Moreover, the Receiver's argument fails to recognize the distinction between Columbian's bookkeeping practices and the separate question of whether it implicitly agreed to accept a check as unconditional payment of Trade Partners' premium obligations. In the Court's estimation, the Policy Report reflects only that the check was received and processed by Columbian. In other words, the Policy Report was prepared as a necessary part of Columbian's accounting and bookkeeping. However, the fact that Columbian *processes* checks with the expectation that they will be honored upon presentment cannot reasonably be construed as an indication that it has agreed to depart from the general rule that payment by check is merely conditional, pending payment thereon.

Finally, the Receiver argues that Columbian failed to promptly return the dishonored check, demonstrating that it accepted the check as unconditional payment of Trade Partners' premium obligation. The check submitted by Trade Partners was first dishonored on February 21, 2003. (Dkt. #1030 at ¶ 45). Pursuant to Columbian policy, whenever a check that has been deposited to its account at HSBC Bank is dishonored, the bank automatically makes a second attempt to clear the check. *Id.* at ¶ 46. According to Columbian, this practice is for the benefit of its policyholders "because it allows the

policyholder an automatic immediate second chance for the premium to be received." (Dkt. #1054 at 13).  Such a policy seems eminently reasonable.

Accordingly, HSBC Bank made a second attempt to collect on the check, but it was again returned unpaid for insufficient funds on February 28, 2003.  (Dkt. #1030 at ¶ 45).  On March 3, 2003, HSBC Bank sent notification to Columbian that the check had been twice dishonored.  *Id.* at ¶ 47. Columbian received this notification on or about March 6, 2003.  Upon receiving this notification, Columbian updated its payment records and forwarded the check to the Premium Administration Department for "processing and correspondence with the Policy owner and maker of the check."  *Id.* On March 19, 2003, Columbian notified Trade Partners that because its check had been twice dishonored its scheduled premium payment was not timely received.  *Id.* at 52.  While Columbian could have perhaps notified Trade Partners a little more quickly that its check had twice been dishonored, such a minimal delay cannot reasonably be interpreted as evidence that Columbian had implicitly agreed to accept Trade Partners' check without reservation.

In sum, for the reasons discussed immediately above, the Court finds that the mere submission of a check by Trade Partners did not constitute absolute and unconditional acceptance by Columbian of Trade Partners' premium payment obligation.


B.      The Policy's Death Benefit was Properly Reduced

As noted previously, the policy provided that - absent an exception - "if a premium is not paid within the grace period, the Policy terminates as of the date the premium was due."  (Dkt. #1030 at ¶ 53).  The policy articulated two possible exceptions to this provision: (1) where the policyholder had elected the Automatic Premium Payment feature, or (2) where the policy possessed a Policy Value (as

that term is defined by the policy).  The parties agree that the policyholder never elected the Automatic Premium Payment feature, thus this exception is not presently applicable.  *Id.*

Pursuant to the terms of the policy, if a premium has not been paid by the end of the relevant grace period, the policy will nonetheless remain in force if the Policy has a "Value" (as defined by the policy).  (Dkt. #264, Exhibit A).  Specifically, the policy provided that the Policy Value will be surrendered to purchase term insurance.  *Id.*  The parties agree that as of February 25, 2003, the policy had a Policy Value of $11,157.67, an amount sufficient to purchase a term policy (effective through April 24, 2003) with a death benefit of $267,308.  (Dkt. #1030 at ¶ 53).  Thus, when Mr. Krevitz passed away on March 4, 2003, the policy provided for a death benefit of only $267,308.  This outcome is in accordance with the express terms of the policy.

The Receiver asserts, however, that Columbian "waived its right to forfeit the Policy for non-payment of a premium."  In the insurance context, New York law defines waiver as "a voluntary and intentional relinquishment of a known right."  *State of New York v. AMRO Realty Corp.*, 936 F.2d 1420, 1431 (2d Cir. 1991) (citation omitted); *In Re Strohe*, 2004 WL 2903616 at *4 (N.Y. Sur., Dec. 13, 2004).  Waiver may be found only where there exists a "clear manifestation of intent" (through either direct or circumstantial evidence) to abandon a particular defense.  *See Gilbert Frank Corp. v. Federal Insurance Co.*, 520 N.E.2d 512, 514 (N.Y. 1988); *AMRO Realty*, 936 F.2d at 1431.

The Receiver asserts that Columbian waived the right to forfeit the policy for non-payment of premiums because it "acted in a manner inconsistent with an intent to insist upon forfeiture." In support of this argument, the Receiver reiterates that Columbian improperly delayed in notifying Trade Partners that its check had been dishonored.  Again, while Columbian could perhaps have notified Trade Partners sooner that its check had been dishonored, its actions cannot reasonably be interpreted

as constituting a "clear manifestation of intent" on its part to waive its right to forfeit the policy for non-payment of premiums.

The Receiver also asserts the analogous argument that Columbian "should be estopped from forfeiting the Policy for non-payment of the January 25, 2003 premium." As the Receiver correctly observes, an insurance company may not rely on a default or forfeiture "in which its negligence or wrongful act contributed." *See, e.g., Dulberg v. Equitable Life Assurance Society of United States*, 12 N.E.2d 554, 557 (N.Y. 1938). In this respect, the Receiver asserts that "Columbian Mutual may not assert the forfeiture of the Policy for non-payment of the January 25, 2003 premium because its actions prevented Trade Partners from ensuring timely payment." This argument is wholly unpersuasive.

As discussed above, Trade Partners did not submit the check in question until three weeks *after* the premium due date (and with only seven days remaining in the grace period). By the time that Columbian was notified by HSBC Bank that the check had been dishonored, the grace period *had already expired*. In such a circumstance, the Court fails to discern how Columbian can in any way be at fault for Trade Partners' failure to timely pay the January 25, 2003 policy premium.

It must also be noted that even if Trade Partners had been *immediately* informed that its check had been dishonored, there exists no evidence that it possessed the money necessary to pay the premium. As the parties have stipulated, during the relevant time period Trade Partners' carried a *negative* balance in its bank account. (Dkt. #1030 at ¶ 48). Specifically, during the time period from February 3, 2003, through March 2, 2003, the average daily balance in Trade Partners' bank account was *negative* $8,455.66. During the time period from March 3, 2003, through March 31, 2003, the average daily balance in Trade Partners' bank account was *negative* $8,831.54. *Id.*

Finally, while Mr. Krevitz's passing prevented Trade Partners from reinstituting the policy,[1] this was a circumstance completely out of Columbian's control.   While the Receiver undoubtedly would have preferred that Mr. Krevitz lived at least long enough to enable Trade Partners to reinstitute (or at least attempt to reinstitute) the policy, the death of the insured simply cannot be imputed to Columbian and interpreted as somehow constituting a waiver or estoppel of Columbian's express rights under the insurance contract.   Moreover, the Receiver has presented no evidence indicating that even had Mr. Krevitz survived that Trade Partners would have qualified for reinstatement of the policy.

In sum, the Court concludes that Columbian neither waived, nor should be estopped from asserting, the right to terminate the policy for non-payment of premiums.  The Court further concludes that the policy's death benefits were properly reduced pursuant to the express terms of the policy.


## CONCLUSION

For the reasons articulated herein, the Court recommends that the Receiver's Motion to Exclude Expert Opinion Testimony, (dkt. #943), be **granted**; the Receiver's Motion for Summary Judgment, (dkt. #1033), be **denied**; and Columbian Mutual Life Insurance Company's Motion for Summary Judgment, (dkt. #1041), be **granted**.

---

[1] Pursuant to its terms, if the policy terminates (or lapses) for non-payment of premiums, the policyholder can apply to reinstate the policy if certain conditions are satisfied.  (Dkt. #264, Exhibit A).  However, the policyholder may not seek reinstatement of a terminated policy if the insured is deceased.  *Id.*

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date:  March 7, 2006                          /s/  Ellen S. Carmody
                                              ELLEN S. CARMODY
                                              United States Magistrate Judge