IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL J. QUILLING, Receiver for Advanced Financial Services, Inc., § § § | |
| Plaintiff, § § | Civil Action No. 1:03-CV-0236 |
| vs. § § | |
| TRADE PARTNERS, INC., MACATAWA BANK CORPORATION, successor by merger to GRAND BANK, THOMAS J. SMITH and CHRISTINE M. ZMUDKA, § § § § § | |
| Defendants. § | |

**REPORT AND RECOMMENDATION**

On August 21, 2006, the Court conducted a hearing on the Receiver's Motion to Forfeit All Interest of Thomas J. Smith and Christine M. Zmudka in the Trade Partners, Inc. 401(k) Plan [Docket No. 1320]. The Examiner, Steven A. Harr, presented the Receiver's Motion. The court considered the position of the Receiver and one response filed by the husband of the late Christine M. Zmudka. After hearing the positions of all interested parties, the Court finds that the Motion should be granted and entire interests of Thomas J. Smith and Christine M. Zmudka in the Trade Partners, Inc. 401(k) Plan should be forfeited to the Receiver and deposited in the general funds of the Trade Partners, Inc. receivership estate.

In support of this Report and Recommendation, the Court finds:

1.  Smith was the President and 50% shareholder of Trade Partners, Inc and was one of the key people in control of the activities of Trade Partners, Inc. since its inception. Smith has been convicted of wire fraud, mail fraud and securities fraud and is currently serving an eight-year prison sentence for his role in the Trade Partners fraud.

2.  Zmudka was the Vice President and other 50% shareholder of Trade Partners, Inc. She was the other key principal involved in the activities of Trade Partners, Inc. from inception. Ms.

Zmudka was the principal contact between Trade Partners, Inc. and Macatawa Bank and was well aware of the lack of the deposit of premium escrow money, a key reason for the failure of Trade Partners, Inc. She also met twice with Michael J. Quilling, as Receiver for Advanced Financial Services, Inc. and misrepresented to him the status of the funds available to pay premiums on the life insurance policies held by Trade Partners, Inc. and in which Advanced Financial Services, Inc. held interests. Had the truth been told to Mr. Quilling, this receivership would have been initiated at a much earlier date. The loss of assets of Trade Partners in the King David, Habersham and some of the New Era transactions would not have occurred. As importantly, had the truth been told to Mr. Quilling, substantial investments from South America would not have occurred and which have now turned in to substantial losses for those investors. Ms. Zmudka was not criminally prosecuted primarily for health reasons. She subsequently died on or about October 25, 2006.

3. Through various motions, hearings and other evidence offered in this proceeding, it has been established that Trade Partners, Inc. was insolvent from at least mid-2000 and had no real net income. Revenue was generated by defrauding new investors out of their money and then used for the operations of Trade Partners, including at least the payment of payroll from which deductions were made to fund contributions to the Plan.

4. Currently under the Plan, Smith and Zmudka have segregated accounts in the custody of Smith Barney and held under the name of "Trade Partners Inc. PS & 401k T. Smith and C Zmudka, Co-ttees". The records of the Plan show that Smith has account number 207-41406-13 031 with a balance in the account at 12/31/05 (which is the last statement available) of $46,859.27. Those same records show that Zmudka has account number is 207-41407-12 031 with a balance as of 4/30/06 (which is the last statement available) of $54,110.22. Because of the knowing participation of Smith and Zmudka in the massive fraud that is Trade Partners, and the fact that substantially all the deposits to the Plan were payroll deductions, as required by law, essentially

coming straight from the proceeds of defrauded investors, the deposits to the accounts of Smith and Zmudka are the ill-gotten gains of the fraud they created.

5.     ERISA's anti-alienation provision do not shield Smith and Zmudka's accounts because the original deposits to their accounts consisted of the ill-gotten gain of a fraudulent scheme and the equitable interests of defrauded investors attached to those funds before their deposit in the plan account.  While ERISA's anti-alienation provisions, 29 U.S.C. § 1056(d) and 26 U.S.C. § 401(a)(13), generally prohibits third parties from reaching pension plan funds to satisfy liabilities of the participants, the Sixth Circuit has found an exception for improper pension plan contributions. See *McGraw v. Society Bank & Trust ( In re Bell & Beckwith),* 5 F.3d 150, 153 (6th Cir 1993).  This exception strips Smith and Zmudka's Plan account of the protection of the anti-alienation provisions of ERISA.

6.     The Sixth Circuit in *McGraw* held that the bankruptcy trustee of a partnership could recover funds from the partners' pension plan accounts when the contributions were made in years the partnership had no net income in violation of the plan's requirements.  5 F.3d at 153.  This circumstance rendered the contributions void *ab initio. Id.*  The court reasoned that ERISA's policy of protecting pension plan benefits does not apply when the partners had no legitimate right to the contributions in the first place. *Id.*

7.     Like the partners in *McGraw*, Smith and Zmudka had no legitimate right to the contributions made to their Plan accounts from the payroll of Trade Partners.  Trade Partners generated revenue by defrauding investors, a scheme carried out with Smith and Zmudka's full knowledge and participation.  This scheme illegally produced funds, some of which paid the company payroll and eventually were taken from their payroll and deposited into the Smith and Zmudka Plan accounts.  The defrauded investors had an equitable interest in those funds before they were deposited into the Plan accounts.

8.     In *St. Paul Fire and Marine Ins. Co. v. Cox*, 752 F.2d 550 (11th Cir. 1985), the Court addressed a similar situation in which the president of a bank was found guilty of criminally mishandling bank funds.  The case does not actually go so far as to say that the result of his criminal conduct was to deposit funds in his pension plan. After paying the bank as surety on a fidelity bond and being subrogated to the claims of the bank for losses stemming from the president's criminal conduct, the Court found that St. Paul was entitled to recover money in the president's pension plan under the exception to the anti-alienation rules of ERISA.

9.     Here the Receiver is in the exact same position as St. Paul. The Receiver is now the agent for Trade Partners and is in fact the party representing all those harmed by the mis-deeds of Smith and Zmudka.  He is uniquely positioned to recover from them all assets they may have that could go to compensate for the losses sustained by the company and its investors.

10.    The Eleventh Circuit affirmed the trial court's finding that St. Paul was entitled to garnish the funds of the bank president in his ERISA based pension and profit sharing plan finding that the mis-deeds of the bank president, including criminal conduct, "militates more strongly in favor of the application of the equitable principle that a wrongdoer should not profit from his misdeeds." Id. at 552.

11.    The decision in *St. Paul* is cited and relied upon in *Calhoun v. FDIC,* 653 F.Supp. 1288 (N.D. Tex. 1987) noting that the holding of *St. Paul* was - "The Court concluded that garnishment undertaken to satisfy liabilities arising from criminal misconduct toward an employer constitutes an exception to the non-alienation provisions of ERISA".  *Id* at 1294.

Accordingly, the undersigned recommends that all relief requested by the Receiver in the Motion to Forfeit All Interest of Thomas J. Smith and Christine M. Zmudka in the Trade Partners, Inc. 401(k) Plan [Docket No. 1320] be **granted** and an appropriate order be entered, if necessary, directing  Smith Barney to disburse the account balances in account number 207-

4

41406-13 031 and account number 207-41407-12 031 to the Receiver.

Respectfully submitted,

Dated:  August 31, 2006      /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Walters,* 638 F.2d 947, 949-950 (6th Cir. 1981).