IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL J. QUILLING, Receiver for Advanced Financial Services, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> TRADE PARTNERS, INC., MACATAWA BANK CORPORATION, successor by merger to GRAND BANK, THOMAS J. SMITH and CHRISTINE M. ZMUDKA, <br><br> Defendants. | § § § § § § § § § § § § § § § § | Civil Action No. 1:03-CV-0236 |

**REPORT AND RECOMMENDATION**

This matter is before the Court on the Objection of Milton W. Mueller to the Amended Proposed Plan of Distribution (Dkt. 1416). Mr. Mueller filed his objection (Dkt. 1416), to which the Receiver responded (Dkt. 1430), to which Mr. Mueller in turn replied (Dkt. 1450). A hearing was held in open court on October 10, 2006. Mr. Mueller communicated that he was unable to attend although he was given notice. Mr. Mueller did thoroughly brief the issue. The Court has also reviewed post-hearing filings by Mr. Mueller (Dkt. Nos. 1467 and 1474) and the Receiver's response (Dkt. 1468). Mr. Mueller has been allowed an "A" claim in the amount of his out-of-pocket net investment of $20,000. At issue is a 21.59434 percentage irrevocable beneficial interest in Metropolitan Insurance Annuity Met Life Policy 850-475-791-UL, hereinafter referred to as the VOY-J(1) Policy.

On April 15, 2003, the Receivership was approved by the Court. The VOY-J(1) policy matured, i.e., the insured died, on June 3, 2003. The proceeds were paid into the Court by the insurance company on March 12, 2004, until the ownership of the policy and the status of Mr.

Mueller as an irrevocable beneficiary could be determined. The total proceeds were in the amount of $109,000.00. Mr. Mueller was named as beneficiary of 21.59434% of that amount.

Mr. Mueller's objections are summarized as follows. First, Mr. Mueller claims that Trade Partners, Inc. ("TPI") did not "own" the policy in question. Second, he claims that no premiums on policy VOY-J(1) were made **by the Receiver**. Third, he claims he is entitled to a special status as an irrevocable beneficiary of the policy. The Court will analyze each of these arguments in turn. For the reasons stated, the Court recommends that Mr. Mueller's objection be denied.

1.       OWNERSHIP OF THE POLICY

First, Mr. Mueller argues that the policy was not owned by TPI but rather was owned by Kelco, Inc. ("Kelco"). There was an affidavit of Charles P. Collier filed by the Receiver, who during all relevant times, November 1998 through March 2001, was employed by Kelco in Lexington, Kentucky. As the Court is aware, approximately 90% of the TPI viatical policies sold came from Kelco. The principals of Kelco are currently in prison and the company is no longer operational. In any event, Mr. Collier swears and affirms that the VOY-J policy was sold by Kelco to Trade Partners in November 1997. According to Mr. Collier, the title ownership of the VOY-J was not changed from Kelco to Trade Partners due to viatical regulations and licensing stipulations mandated by the state of New York. As the Court is also no doubt aware, the transfer of ownership in viatical policies has been notoriously difficult throughout this case despite a 2004 court order to the insurance companies to transfer such ownership. Mr. Collier's affidavit at ¶ 9 attests to this fact. In any event, the premiums on the policy were paid for with TPI funds from approximately November 1997 until December 2002, which was the last time a premium was due before the policy "matured." For these reasons, the undersigned is persuaded that the beneficial ownership of the

VOY-J policy was vested in TPI at the time the Receiver was appointed on April 15, 2003.  Thus, Mr. Mueller's arguments based on the ownership of the policy are rejected by the Court.

2.      THE QUESTION OF PREMIUMS PAID BY THE RECEIVER

As the Court is aware, TPI assets were pooled for two reasons, with tracing principles being rejected for three reasons: 1) The fraud committed by TPI has features that are similar or common to all victims; 2) some commingling of funds occurred both prior to and following the Receivership; and 3) Since all of the viatical investors were defrauded, there was no equitable reason to accord greater compensation to one class of victim or another.  See, e.g., *SEC v. Credit Bancorp, Ltd.*, 290 F.3d 80, 88-89 (2d Cir. 2002), *citing Cummingham, as Trustee for Ponzi v. Brown*, 265 U.S. 1 (1924); *SEC v. Forex Asset Mgt.*, 242 F.3d 325 (5th Cir. 2001); *CFTC v. Topworth Int'l. Ltd.*, 205 F.3d 1107, 1115-16 (9th Cir. 1999); *U.S. v. Real Property Located at 13328 and 13324 State Hwy.*, 89 F.3d 551, 553 (9th Cir. 1996).  In a comparable viatical case, the Sixth Circuit held that the district court properly directed pooling of the Receivership estate's assets and a pro rata distribution among viatical investors.  *Liberte Capital Group v. Capwill*, 148 Fed. Appx. 426 (6th Cir. 2005) (unpublished opinion).[1]

Therefore, the Court concludes that the fact that premiums were paid by TPI on the VOY-J policy before but not after the creation of the Receivership is not critical to a conclusion that pooling and a pro rata distribution is appropriate in this case.  TPI's conduct of its business had been highly irregular for years.  The essence of a Ponzi scheme is that monies contributed by subsequent investors are used randomly to satisfy obligations of the defrauder.  It is not possible to trace which investors funds were used to pay the premiums on the VOY-J policy from 1997 through 2002.

---

[1] It should be noted that the Sixth Circuit expressly observed that the question of the rights of an irrevocable beneficiary to superior treatment was not before the Court at that time (*Id.* at 434); however, as will be discussed in detail below, the same analysis employed by the Sixth Circuit applies in favor of pooling all viaticals and viatical investor claims, including those of irrevocable beneficiaries.

*Compare, Liberte Capital Group*, 148 Fed. Appx. at 435-36: "The funds used to pay premiums were borrowed from a pool of funds that belonged to all Liberte investors.  Thus, and the district court held, but for the use of the Liberte investor funds, the Crivello premiums would not have been paid and the policy would have lapsed.  For this reason, the district court did not err in exercising its equitable discretion to adopt a pro rata approach rather than a tracing method."  Thus, the Court concludes that whether comingled funds were used prior to the creation of the Receivership or pooled funds thereafter to pay premiums is not relevant to the analysis of whether a pro rata distribution to all investors is appropriate rather than using a tracing method.

3.   STATUS AS IRREVOCABLE BENEFICIARY

In the case of *Liberte Capital Group v. Capwill*, 421 F.3d 377 (6th Cir. 2005), the Sixth Circuit did remand for a due process hearing a claim by intervening plaintiff Janet E. Mohnkern on due process grounds when Mohnkern claimed ownership as the specified beneficiary on a matured policy.  The Sixth Circuit did not decide the ownership issue; it simply remanded on the basis that Ms. Mohnkern was entitled to be heard on the issue.  A review of the electronic docket sheet for the *Liberte Capital* case in the Northern District of Ohio, Case No. 5:99-cv-818, shows no further activity regarding the Mohnkern claim.

Mr. Mueller's objection is distinguishable for several reasons.  First, the policy in question "matured" after the creation of the TPI receivership estate.  Ms. Mohnkern's claimed policy "matured" substantially before the creation of a receivership in the *Liberte Capital* case. Second, a separate hearing was held on Mr. Mueller's objection to the proposed plan of distribution.  He submitted at least five different briefs on the issue.  Third, there is no question that Mr. Mueller has a property interest in the receivership estate and has been recognized by the allowance of an "A" claim in the amount of his out-of-pocket net investment of $20,000.  This is

identical to the way every other viatical investor has been treated.  Fourth, the Receiver estimates that TPI has been insolvent since at least 1999.  During that period, TPI was "borrowing from Peter to pay Paul."  (Marcus Tullius Cicero).  The Court will recall the cross-motions for summary judgment on the Court's issuance of an order to show cause to Columbian Mutual Life Insurance Company ("Columbian"), upon which the undersigned made a report and recommendation (Dkt. 1239).  The report and recommendation was approved by order of the Court (Dkt. 1261).  The issue involved was a $1 million life insurance policy which Columbian claimed had lapsed for failure of TPI to pay the premiums, specifically, TPI had submitted "insufficient funds" checks in early 2003.  This is but one example of the helter-skelter way in which TPI was conducting its business.  There is no doubt that, had it been the VOY-J(1) policy that lapsed, Mr. Mueller would be relieved to be included in the pro rata distribution of the estate.

For the reasons stated, the Court recommends that Milton W. Mueller's objection to the Amended Proposed Plan of Distribution (Dkt. 1416) be **denied**.

Respectfully submitted,

Date:  November 17, 2006

 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 949-950 (6th Cir. 1981).