IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL J. QUILLING, Receiver for Advanced Financial Services, Inc., Plaintiff, § § § § § § § § | Civil Action No. 1:03-cv-0236 |
| v. | |
| TRADE PARTNERS, INC., et al., Defendant. | |

## REPORT AND RECOMMENDATION

The Receiver filed his First Amended Plan of Distribution ("Plan') (Dkt. 1351), and sent the Plan to all holders of A and B claims in the case (Dkt. 1352). Several A and B claimants filed objections to the Plan.[1] The Court conducted hearings with respect to the Plan on September 26, October 10 and October 25, 2006. All claimants and interested parties were given an opportunity to be heard. After considering the Plan, all objections, the evidence presented, the applicable authorities and the argument of counsel, the Court recommends that the Plan be approved and that the Receiver be authorized to implement its terms. In making this recommendation, the Court will address below the objections filed by each objecting claimant.

Milton Mueller, the holder of two allowed A claims in the amounts of $20,000.00 and $20,470.58 (Claim Nos. A-00549 and A-00548), filed an objection[2] (Dkt. 1416). First, Mr. Mueller contends that the Court must apply the Bankruptcy Code to the Plan. This proceeding is a federal equity receivership and the Bankruptcy Code does not apply. *SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 332 (5th Cir. 2001). Instead, when appropriate, courts can consider bankruptcy provisions

---

[1] In addition to the objections discussed in this Report and Recommendation, David Ellis (Dkt. 1424) and the City of Grand Rapids (Dkt. 1418) filed objections to the Plan, which were resolved and withdrawn.

[2] Mueller objects only as to the treatment of one claim. The other claim (Claim No. A-00549) he contends is not part of the receivership estate.

for guidance but are not generally required to apply the Bankruptcy Code. *SEC v. P.B. Ventures*, 1991 WL 269982, *3 (E.D. Pa. 1991). Here there is no reason for the Court to apply the stringent requirements of the Bankruptcy Code.

Mr. Mueller also complains that classes 4 through 7 should not share in the pool of proceeds because no funds were recovered by the Receiver from assets attributable to those investments. While this may be true as to classes 4 and 5, what Mr. Mueller is asserting is that a tracing analysis must be utilized by the Court. As discussed below, the courts, which have considered it, have rejected this tracing analysis. Instead the courts have almost universally held that a pooling analysis is more appropriate. A pooling approach as opposed to a tracing approach is the law in this Circuit.

District courts sit as courts of equity in federal receivership proceedings. *SEC v. Basic Energy & Affiliated Resources, Inc.*, 273 F.3d 657, 668 (6th Cir. 2001); *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992). As courts of equity, district courts have "broad powers and wide discretion" to fashion appropriate relief in federal receivership proceedings. *Basic Energy*, 273 F.3d at 668; *Elliott*, 953 F.2d at 1566. In ruling on a plan of distribution, the standard is simply that the district court must "use[] its discretion in a logical way to divide the money." *U.S. v. Durham*, 86 F.3d 70, 73 (5th Cir. 1996).

It is well within the district court's discretion to reject equitable principles of tracing, restitution, reclamation, etc. and order a *pro rata* distribution to treat all defrauded investors equally in proportion to their losses. *Liberte Capital Group, LLC v. Capwill*, 148 Fed. Appx. 426, 435 (6th Cir. 2005); *SEC v. Credit Bancorp, Ltd.*, 290 F.3d 80 88-89 (2d Cir. 2002); *U.S. v. Real Property*, 89 F.3d 551, 553 (9th Cir. 1996); *Elliott*, 953 F.2d at 1569-70; *Durham*, 86 F.3d at 73. The use of a *pro rata* distribution plan is especially appropriate for fraud victims of a Ponzi scheme, in which earlier investors' returns are generated by the influx of fresh capital from unwitting newcomers rather than

through legitimate investment activity.  *SEC v. George*, 426 F.3d 786, 799 (6th Cir. 2005); *Credit Bancorp*, 290 F.3d at 89.  As the Supreme Court explained in the litigation that gave the Ponzi scheme its name, "equality is equity" as among "equally innocent victims." *Cunningham v. Brown,* 265 U.S. 1, 13 (1924).

The analysis is no different where multiple entities are used to implement the fraudulent scheme.  *Durham*, 86 F.3d at 72.  In *Durham*, the wrongdoers used multiple corporations as part of a fraudulent advance fee loan financing business.  *Id.* at 71.  When the FBI shut down the scheme, only one corporation had any funds.  *Id.* at 72.  The district court rejected the arguments of two victims whose funds were traced to that corporation, and instead ordered that the funds be distributed *pro rata* among all victims of the entire scheme.  *Id.*  The Fifth Circuit Court of Appeals affirmed and quoted the following excerpt from the district court's order with approval:

> In determining a plan for distribution, the Court must act to determine the most equitable result.  In the instant action, all claimants stand in equal terms of being victimized by the defendant defrauders.  The ability to trace the seized funds to [two of the claimants] is the result of the merely fortuitous fact that the defrauders spent the money of the other victims first.  Allowing [those two claimants] to recover from the funds seized to the exclusion of the other victims under the tracing principle would be to elevate the position of those two victims on the basis of the actions of the defrauders.  The Court sees no justification in equity for this result.

*Id.*  Likewise, the Court sees no reason in this case not to continue following the pooling analysis which was established as the law in this case very early in these proceedings. (Dkt. Nos. 140 and 141).

Mr. Mueller also contends that he was the irrevocable beneficiary under a policy which was not owned by Trade Partners and, therefore, not part of the assets of this receivership.  The subject policy matured prior to the "pooling" order, but after the order appointing the Receiver.  Mr. Mueller claims that the funds from the maturity of that policy should not be included in the pool of funds to be distributed.  The Court has addressed this contention by separate Report and Recommendation

(Dkt. 1497) but, for the purposes of the Plan, the Court finds that the objections should not delay implementation of the plan.  If any appeals by Mr. Mueller are successful, the Receiver has reserved more than sufficient funds from the interim distribution to allow this issue (and those of any other claimant who objects to this Report and Recommendation) to be addressed in the context of the final distribution under the Plan.

Ungaretti & Harris, a law firm in Chicago, the holder of an allowed B claim in the amount of $312,264.66, objected to the Plan because in their view it was inequitable to not allow the B claimants to share in the funds to be distributed to A claimants.  A separate Report and Recommendation has been issued on Ungaretti & Harris' objections (Dkt. 1498).  Similarly, Ungaretti & Harris' objection should not delay interim distribution under the Plan.

A district court's "broad powers and wide discretion" extend to allocating the priority of distributions from the receivership estate.  *In re Indian Motorcycle Litigation*, 307 B.R. 7, 16 (D. Mass. 2004).  In receivership proceedings arising out of securities fraud, the class of fraud victims takes priority over the class of general creditors with respect to proceeds traceable to the fraud.  The equitable doctrine of constructive trust gives "the party injured by the unlawful diversion a priority of right over the other creditors of the possessor."  III CLARK ON RECEIVERS § 662.1 at 1174 (Anderson 3d ed. 1959) (quoting authorities.)  The line of authorities applying this principle includes decisions of the United States Supreme Court.  *See, e.g.*, *Gorman v. Littlefield*, 229 U.S. 19 (1913) (upholding claim of customer of failed brokerage firm to stock traceable to his account as against claims of general creditors of failed firm); *Duel v. Hollings*, 241 U.S. 523 (1916) (directing pro-rata distribution among parties tracing their claims to identified stock over general creditor claims).

The constructive trust arises in favor of the injured party on the date the wrongful act occurs. *U.S. v. Fontana*, 528 F. Supp. 137, 146 (S.D.N.Y. 1981) (citing 5 Scott, Trusts [3d ed.] § 462.4). The Court does not create a constructive trust, but instead simply recognizes and enforces it:

> Where the title to property is acquired by one person under such circumstances that he is under a duty to surrender it, a constructive trust immediately arises…. It would seem that there is no foundation whatever for the notion that a constructive trust does not arise until it is decreed by a court. It arises when the duty to make restitution arises, not when the duty is subsequently enforced.

*Id.* (quoting 5 Scott, Trusts [3d ed.] § 462.4).

Charles Willette, the holder of a disputed B claim in the amount of $250,000, apparently for alleged unpaid "commissions" due on investments allegedly made by parties introduced by Mr. Willette to Trade Partners, attempted to file an objection (Dkt. 1464), which was stricken (Dkt. 1464), and then resubmitted (Dkt. 1492). Mr. Willette claims to be confused about the situation and does not know his position regarding the Plan. The Court finds this objection to be without merit. The Plan specifically states, in plain English, that B claimants will be paid nothing under the Plan. Regardless of the amount of his claim or whether it has been allowed, Mr. Willette can determine whether he supports or opposes nothing being paid to him on his claim. To the extent he objects that he is not being paid anything (which the Court presumes) the objection has been addressed above in connection with the Ungaretti & Harris claim. Furthermore, if the claim is for unpaid commissions, the Receiver has the right to offset any amount received by Mr. Willette pursuant to prior order of the Court (Dkt. No. 860).

Caleb Vandyke, the holder of an A claim, filed an objection (Dkt. 1426), as did Billie Clifton (Dkt. 1397), which complained that the percentage being paid under the Plan was too low. However, the Receiver is going to distribute all the funds he has been able to marshal under the Plan. There is no way to increase the percentage. Thus, these objections have no merit.

AnnaBelle Clark, Leroy Clark and David Clark, holders of A claims, filed an objection (Dkt. 1379) stating that the class 3 claimants should be given priority in terms of timing of payment. The Plan provides this class, along with the other A claim classes, will be paid first so this objection has no merit.

Ewa Mayes, the holder of an A claim, filed an objection (Dkt. 1405) which claimed that the process had taken too long, that she needed the funds earlier, and that too much had been spent on legal fees. Unfortunately, these types of proceedings necessarily take a long time and are expensive. However, the time spent is reasonable given the convoluted nature of Trade Partners' business dealings. The Court notes that this matter has proceeded more expeditiously than many. Further, the attorney fees have been approved periodically and have not been found excessive given the complicated nature of the work involved.

The Metropolitan Government of Nashville and Davidson County, TN, the holder of a B claim, filed an objection (Dkt. 1425), which asserts that it holds a secured claim and it must be treated as a class 2 claim. The Receiver argues that while the claimant has a valid lien against the real property in question (Music Valley Hotel in Nashville), the lien follows the property and only the property, which the Receiver allowed to be foreclosed upon by the lender (New Era) early in this receivership. The receivership estate did not receive any funds as a result of the foreclosure sale. As to the receivership estate, the claim is unsecured. The Receiver urges that the claimant pursue the lien against the property. The claimant argues that the owner/operator is responsible for the taxes under applicable provisions of the Tennessee Code. While this may be true, the claim is still unsecured which would make it a B claim. Accordingly, the Court finds that this objection has no merit.

Finally, the Court notes that given the thousands of investors involved, the number of objections was quite small.

For these reasons, the Court recommends that the Plan be approved and that the Receiver be authorized to implement its terms forthwith.

Dated:  December 1, 2006.

     /s/ Ellen S. Carmody
HONORABLE ELLEN S. CARMODY
United States Magistrate Judge


OBJECTIONS to this Report and Recommendations must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Walters,* 638 F.2d 947, 949-950 (6th Cir. 1981).