UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL J. QUILLING,

       Plaintiff,                                  Hon. Robert Holmes Bell

v.                                                      Case No. 1:03-cv-00236

TRADE PARTNERS, INC., et al.,

       Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Party In Interest Frank Taber's Motion for Limited Intervention and Claim Against Trade Partners, Inc. and Its Receiver to Determine Taber's Interest and Obtain Instructions (Dkt. Nos. 1573 and 1574). The motions were referred to me for report and recommendation by the Honorable Robert Holmes Bell and a hearing was held on June 5, 2007.

Frank and Willie Jean Taber sold their Branson, Missouri motel, realty and operating company to Trade Partners, Inc. ("TPI") by contract dated October 1999, which was amended and closed in March 2000. They sold their interest in the motel, realty and operating company in return for $1,004,000 in cash and a $1,000,000 interest in a viatical policy (Policy WAL-3) with death benefits totaling $2,900,000. Frank Taber was at one time listed on the records of Jefferson Pilot Insurance Co. as a beneficiary of a .3448% fractionalized interest of the stated policy. At some time after Taber's transaction with TPI he was removed as beneficiary from the records of the relevant insurance company without his consent. Taber appeared in this matter on June 18, 2003, at a hearing

before the Honorable Richard Alan Enslen on the Receiver's motion to pool the assets of TPI.  In order to allow the hearing on the pooling issue to proceed, Taber's claims were taken under advisement, with his interest in the WAL-3 policy preserved pending further adjudication.

Frank Taber's position is that his status as a creditor in this matter is unique.  He is not a secured creditor and not a judgment lien holder.  He is not and never has been the owner of WAL-3.  Prepayment of premiums on the WAL-3 policy was made by TPI from its general operating funds.

Taber relies on a series of Michigan cases for the following proposition: "It is the established law in Michigan that in order to obtain a vested right in an insurance policy, there must be an express contract founded upon valuable consideration between the assured and the beneficiary." *Golembieski v. Golembieski*, 9 N.W.2d 44 (Mich. 1943); *Bland v. Bland*, 180 N.W. 445 (Mich. 1920).  In *Bland*, the Michigan Supreme Court held that a contract to marry was supported by sufficient consideration when the husband agreed to make his forthcoming wife the beneficiary of his life insurance policy.  The wife received a vested interest when the marriage took place.

He further argues that when a beneficiary is vested in interest in the policy, the beneficiary cannot be done out of that interest by a change of the beneficiary on the policy.  The Michigan Supreme Court has noted that ". . . a court of equity will nullify a change of beneficiary which cuts off the rights of one named as beneficiary which have become vested." *Chrysler Corp. v. Disich*, 294 N.W. 673, 677 (Mich. 1940).

Taber also relies on *MacDonald v. Conservative Life Ins. Co. of Wheeling, West Virginia*, 290 N.W. 372 (Mich. 1940).  In *MacDonald*, a nurse served a Michigan person who was quite ill for approximately six years, in return for minimal wages and a promise that she would receive the benefits of his life insurance.  The patient's health improved and he released the nurse from her

duties and returned to a normal social life. The patient then found a girlfriend and changed his life insurance policy to make his girlfriend the sole beneficiary. After his death, the nurse sued to recover the proceeds. The Michigan Supreme Court held that because she had an enforceable contract with the decedent which included the life insurance benefit, and had performed her part of the contract, she had a vested interest in the benefit. Therefore, the decedent could not subsequently reassign the benefit of that policy to another.

However, what Taber's arguments do not recognize is that all of the investors had a vested interest in the investment they thought they were making. They were all defrauded. Frank Taber is not being de-vested of his right to participate in a pro rata distribution on the amount of his investment just like every other investor. The fraud perpetrated by TPI created a state of chaos. This is why the Court long ago decided on a pooling approach rather than a tracing approach. A threshold issue in this case was whether to "pool" assets for everyone's common benefit or to allow individual claimants to "trace" their investments to specific assets. Because TPI was insolvent for a long time, perhaps as early as 1996 but certainly by 2000, and because TPI co-mingled assets and used the later investments both to pay earlier investors (Transcript of June 5, 2007 hearing pp. 128-29) and for general operating expenses, classic indicia of a Ponzi scheme, the Court decided not to adopt a tracing format but to pool assets and use a pro-rata distribution method.

In Receivership cases where the fraud has features that are similar or common to all victims, and at least some commingling of funds occurred, pro-rata distribution of pooled assets has been the standard. *SEC v. Credit Bancorp, Ltd.*, 290 F.3d 80, 88-89 (2d Cir. 2002), citing *Cunningham, as Trustee for Ponzi v. Brown*, 265 U.S. 1 (1924); *SEC v. Forex Asset Mgt.*, 242 F.3d 325 (5th Cir. 2001); *see also Commodity Futures Trading Com'n v. Topworth Intern., Ltd.*, 205 F.3d 1107, 1115-

16 (9th Cir. 1999); *U.S. v. Real Property Located at 13328 and 13324 State Hwy.*, 89 F.3d 551, 553 (9th Cir. 1996). Every Class A claimant in this Receivership parted with consideration (usually money, sometimes property) in furtherance of a contractual right to either the entire proceeds, or as in the case of Frank Taber a portion of the proceeds, of an insurance policy. Even according to Frank Taber's theory, every Class A claimant holds a vested right. Pooling rather than tracing is the preferred and applicable methodology in this equitable case. *Liberte Capital Group, LLC v. Capwill*, No. 03-3330, 2005 WL 2062677 at *7 (6th Cir. Aug. 29, 2005) (unpublished); *U.S. v. Real Property Located at 13328 and 13324 State Hwy.*, 89 F.3d 551, 553 (9th Cir. 1996). This is also the law of this case.

The most analogous situation is that of Dr. McNamara. Even though Dr. McNamara was truly a "secured creditor" in a specific policy, the Court previously denied him his full contract rights under state law. (See Op. of the Honorable Robert Holmes Bell, Dkt. 1290). Judge Bell's Opinion supports that federal equity receivership principles in these circumstances trump state law. As stated by Chief Judge Bell:

> "[A] receiver appointed by a federal court takes property subject to all liens, priorities, or privileges existing or accruing under the laws of the state." *In re American Fuel & Power Co.*, 151 F.2d 470, 481 (6th Cir.1945) (quoting *Marshall v. New York*, 254 U.S. 380, 385 (1920)). Having said that, it does not necessarily follow that McNamara is entitled to the full recovery of his principal and interest. "A district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *Securities and Exchange Comm'n v. Elliott*, 953 F.2d 1560, 1569-70 (11th Cir. 1992)). This includes "the discretionary authority to deny state law remedies as inimical to the receivership." *Liberte Capital Group, LLC v. Capwill*, No. 03-3330, 2005 WL 2062677 at *7 (6th Cir. Aug. 29, 2005) (unpublished) (citing *United States v. Vanguard Inv. Co.*, 6 F.3d 222, 226 (4th Cir. 1993); *Elliott*, 953 F.2d at 1569-70). (Emphasis added.)

Frank Taber finds himself in an unenviable position, as do all of the investors in this fraudulent company. The sad fact of the matter is that there are insufficient funds to return every

investor's investment to them in full.  The undersigned discerns no basis upon which to conclude that Frank Taber was any more or less defrauded than any of the other Class A investors.  Therefore, it is recommended that:

1.Party In Interest Frank Taber's Motion for Limited Intervention to Determine Taber's Interests and Obtain Instructions (Dkt. 1573) be **granted**; and that

2.Party In Interest Frank Taber's Claim Against Trade Partners, Inc. and Its Receiver to Determine Taber's Interest and Obtain Instructions (Dkt. 1574) be **granted in part** and that Frank Taber be granted a Class A claim in the amount of $1,000,000 and receive pro rata distribution along with all of the other Class A claimants.

Respectfully submitted,

Date:  March 3, 2008 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).