IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL J. QUILLING, Receiver for Advanced Financial Services, Inc., §§§§ Plaintiff, §§ vs. §§ TRADE PARTNERS, INC., MACATAWA BANK CORPORATION, successor by merger to GRAND BANK, THOMAS J. SMITH and CHRISTINE M. ZMUDKA, §§§§§§ Defendants. | Civil Action No. 1:03-CV-0236 |

## REPORT AND RECOMMENDATION REGARDING DOCKET NO. 1743

This matter is before the Court on the Receiver's Motion to Approve Purchase and Sale Agreement Termination Agreement, Settlement Agreement, and Mutual Release with Universal Settlements International, Inc. (Dkt. 1743). Universal Settlements International, Inc. ("USI") concurs with the requested relief. The parties were heard on this motion on January 12, 2009. The hearing took over an hour, and the transcript of the hearing is filed at Dkt. 1777 in this matter.

I.   BACKGROUND FACTS

By order of this Court on July 19, 2005 (Dkt. 1057) the Receiver was authorized to sell the entire Trade Partners Inc. ("TPI") insurance portfolio to USI. The Receiver and USI entered into a purchase and sale agreement dated January 14, 2005, a First Amendment in July 2006 and a Second Amendment dated July 11, 2007 (collectively, the "Sale Agreement"). The Receiver, USI and Echelbarger, Himebaugh, Tamm & Co., P.C., as Escrow Agent (the "Escrow Agent") entered into an Escrow Agreement dated June 6, 2007 ("Escrow Agreement"). Thereafter, various issues arose

between the Receiver, the Escrow Agent and USI, and the Receiver issued a Notice of Default to USI dated October 3, 2007. On October 8, 2007, the Receiver and USI entered into a Forbearance Agreement (the "Forbearance Agreement"). In an effort to resolve any and all issues and claims concerning or arising out of the Sale Agreement, Escrow Agreement and Forbearance Agreement, the parties thereto have reached a full and complete settlement with no admission of liability on the part of any party. As noted, the parties have resolved their respective points of disagreement on, among others, the terms and conditions that follow, subject to the approval of the Court:

1. The Purchase and Sale Agreement, Escrow Agreement, and Forbearance Agreement are terminated and the Parties shall have no further obligations thereunder.

2. The Policy designated HOR-G (1) policy (Policy No. M9852809) will be transferred to USI, and prior to the transfer USI will reimburse the Receiver for any premium paid by the Receiver on the HOR-G(1) policy and no other amounts will be due and owing by USI to the Receiver on such policy.

3. The Receiver shall retain and will not transfer to USI, and USI will not be obligated to purchase or pay for the remaining policies (not already transferred) and the Receiver shall be responsible for the payment of all premiums, with USI relinquishing any claim for reimbursement of premiums paid on such policies and any maturities.

4. The Receiver shall retain all funds in the Registry of the Court and USI relinquishes any claim to these funds and any death benefits on MOR-J (Policy No. 63909034), WEB-G (Policy No. GC-47080.003641101) and DAB-D (Policy No. 0002390613), and TAY-B (Policy No. 24392). Receiver relinquishes any claim for any payment or claim for any portion of any benefits, including death benefits for CLA-D (Policy No. 0010006295), KOV-K (Policy No. CSA-4397975), FOB-S (Policy No. 41282287), MIL-L (Policy No. G-076: MP300011), MON-M (Policy No. MP300001),

and SAR-J (Policy No. G0000 7047-0001). These are policies that have previously been transferred to USI and have matured.

5.  The Receiver and USI shall relinquish any claim for payment that each may have against the other for "discrepancies" or reconciliation between the face amount of policies sold by the Receiver to USI under the Sale Agreement and the actual benefits paid by USI to the Receiver for such policies, including death benefits.

6.  The Parties mutually release each other pursuant to the terms of a mutual release.

## II. LEGAL STANDARD

There is no statutory standard for approval of settlements in a federal equity proceeding. However, the Court has broad authority over estate administration. *See, e.g., SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). Courts may also look to bankruptcy law, which is founded on equitable principles, for guidance, including the standard set forth in *Protective Comm. For Independent Stockholders of TMT Trailer Ferry, Inc. vs. Anderson,* 390 U.S. 414 (1986). In *TMT Trailer Ferry,* the United States Supreme Court stated that the following factors are to be considered in determining the appropriateness of a compromise:

a.  The probabilities of ultimate success should the claim be litigated;

b.  An educated estimate of (i) the complexity, expense, and likely duration of such litigation; (ii) the possible difficulties of collection of any judgment which might be obtained; and (iii) all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise; and

c.  The comparison of the terms of the compromise with the likely result of litigation. *TMT Trailer Ferry,* 390 U.S. at 424-25.

III.  THE PROFFER

Both parties at the January 12, 2009 hearing were represented by counsel. The hearing on the Receiver's motion lasted in excess of one hour. In summary, USI's financial situation became precarious and it is currently in the Canadian rough equivalent of Chapter 11 Bankruptcy. The Receiver estimated that under the settlement agreement the Receivership estate will receive between $1,013,000.00 and $3,000,000 more than it would have received under the original $43.5 million purchase price in the Sale Agreement. The Receiver continues to assert the same good faith estimate of return to the investors of between 33 and 35%. Counsel stated that the settlement was reached as a result of arm's length negotiation and it took a great deal of time to reach a compromise satisfactory to the parties. Perhaps the most important motivation for the Receiver to resolve its disputes with USI is its concerns over collectibility of any remaining amounts owed. It did not want to transfer any additional policies to USI when it was doubtful whether USI could pay the price under the Sales Agreement for those policies.

IV.  CONCLUSION

For all of the above reasons, it is recommended that the Receiver's Motion to Approve Purchase and Sale Agreement Termination Agreement, Settlement Agreement, and Mutual Release with Universal Settlements International, Inc. (Dkt. 1743) be **granted** and the settlement approved by the Court. A further issue is USI's wish to keep the settlement agreement as confidential as possible. The parties were advised at the January 12, 2009 hearing that any TPI investor or other creditor would have the right to review the settlement agreement. Therefore, **it is further recommended** that USI and TPI be ordered to stipulate to entry of an order stating that the settlement agreement shall be filed under seal, but that anyone with an interest in the TPI estate may apply to the Receiver to review the settlement agreement, and that Bruce Kramer, as Receiver for

TPI, would thereby have the authority to show the interested party a copy of the settlement agreement.

                                                Respectfully submitted,

Date:  March 27, 2009                        /s/ Ellen S. Carmody
                                                ELLEN S. CARMODY
                                                United States Magistrate Judge

     OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Walters,* 638 F.2d 947, 949-950 (6th Cir. 1981).