IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MICHAEL J. QUILLING,

      Plaintiff,                    Case No.: 1:03-CV-0236

                                   Hon. Robert Holmes Bell

v.


TRADE PARTNERS, INC., et al

      Defendants


_____/


## REPORT AND RECOMMENDATION


This matter is before the Court on the Receiver's Motion to Market and Sell Insurance Policies and to Establish Procedures Therefore, (Dkt. 1823), which was referred to the undersigned by the Honorable Robert Holmes Bell for report and recommendation.

The Receiver previously filed a Motion to Approve Sales Procedures and to Authorize Sale of Policies Free and Clear of Interest (Dkt. 834). In a previous Report and Recommendation dated May 23, 2005, the undersigned recommended that the Receiver's previous Motion be granted (Dkt. 1017). The District Court issued an opinion on July 19, 2005 approving the Report and Recommendation (Dkt. 1057). In accord with the District Court's Order, the Receiver entered into a Sales Agreement with Universal Settlements International, Inc. (USI), which Agreement was subsequently approved by the Court. Subsequently, the Receiver sought termination of the Purchase and Sale Agreement with Universal Settlements International, Inc.

Following notice and hearing, the Court approved the Receiver's Motion to enter into a settlement agreement and mutual release with USI, which terminated the Purchase and Sale Agreement (Dkt. 1743).

As a result of the termination and settlement with USI, the Receiver is presently administering approximately 60 life insurance policies with a face value of death benefits of approximately Six Million Dollars ($6,000,000,000.00). The Receiver has now filed a Motion seeking authority to market and sell the remaining portfolio and to establish procedures to do so. (Dkt. 1823) There have been no objections to the Receiver's Motion. On October 6, 2009, the undersigned considered the Receiver's Motion and statements of the Examiner and Receiver.

## BRIEF FACTUAL BACKGROUND

Pursuant to an Agreed Order dated April 15, 2003 (Dkt. 6) (the "April 15, 2003 Agreed Order") and a subsequent Order dated July 21, 2003 (Dkt. 141) (the "July 21, 2003 Order" and collectively with the April 15, 2003 Order, the "Order Appointing Receiver") Bruce S. Kramer was appointed Receiver for Trade Partners, Inc. and related and affiliated entities, including various trusts and limited liability companies (collectively, "Trade Partners") and was authorized to have complete and exclusive control, possession, and custody of all Receivership Assets of Trade Partners. "Receivership Assets" were defined in the April 15, 2003 Order as "the assets, monies, securities, choses in action, and properties, real and personal, tangible and intangible, of whatever kind and description, wherever situated, of Defendant Trade Partners, Inc." (¶ 1, April 15, 2003 Agreed Order Appointing Receiver).

The Receiver has been acting and fulfilling his duties as Receiver since his appointment and has marshaled the Receivership Assets for the benefit of Trade

Partners' creditors and investors. The Court has also approved the Receiver's Plan and Distribution, which has resulted in the distribution of approximately $55,000,000.00 to over 3500 approved claimants with over 10,500 claims.

The Receiver, with prior Court approval, entered into a Purchase and Sale Agreement to sell the entire Trade Partners insurance Portfolio to USI. Because of various issues, the Receiver filed a Motion to Terminate the Purchase and Sale Agreement under a Mutual Settlement and Termination Agreement (Dkt. 1743). After a hearing on the Motion, the undersigned issued a Report and Recommendation (Dkt. 1784) and the Court entered an Order Approving the Report and Recommendation granting the Receiver's Motion approving the Settlement Agreement and terminating the contract with USI. (Dkt. 1790). As a result of the termination of the Purchase and Sale Agreement with USI, the Receivership retained ownership of, and the Receiver and has been administering, approximately 60 insurance policies with face death benefits of approximately $6,000,000 (the "Remaining Portfolio").

The Remaining Portfolio is the only remaining asset that needs to be disposed of in order to maximize distribution to the creditors and close the estate.

If authorized to do so, the Receiver intends to adhere to the following procedures to secure the highest and best price for the entire Remaining Portfolio "as is, where is" and without representations and warranties:

a) Solicit interest from potential purchasers in a commercially reasonable manner, post the inventory of the Remaining Portfolio available for sale

b) Obtain a confidentiality agreement from each potentially interested purchaser;

c) Upon receipt of a signed confidentiality agreement, each potential interested purchaser will be given to access to the policy records and data for the Remaining Portfolio in order to perform due diligence;

d) On or before a date certain to be set by the Receiver, but at least 30 days after Court approval of the Bid Procedures (Exhibit 1 to Dkt. 1823), any Qualified Bidder (as that term is defined in the Bid Procedures) wishing to make a bid for all of the Remaining Portfolio must submit a sealed written bid to the Receiver. All bids must be on an all-cash basis in a single lump sum of "immediate funds" and each bidder must state in writing its willingness to place one hundred thousand and no/100 dollars ($100,000.00) in the Receiver's escrow account upon written notification by the Receiver that it is the highest bidder, while Court approval is obtained. The Receiver will supply each potential purchaser who is given access to the Remaining Portfolio, with a form on which to submit its written bid substantially in the format set forth in Exhibit 2 to Dkt. 1823;

e) Upon receipt of the last bid prior to the bid deadline, the Receiver and the Examiner will rank the bids according to the amounts thereof and

f) Assuming the highest bid is acceptable to the Receiver, a Purchase and Sale Agreement (in substantially the form attached as Exhibit 3 to Dkt. 1823) by the party submitting such highest bid ("Initial High Bidder") will be submitted to the Court for hearing and approval;

g) The Receiver will then provide proper and sufficient notice to all interested parties and investors of the Hearing date and provide all interested parties an opportunity to be heard;

h) All losing bidders and any other Qualified Bidders interested in making a higher bid than the one submitted to the Court for approval will be free to attend the Hearing and present a higher offer at an auction conducted by the Receiver, with Court supervision. The auction will continue until the highest and final bid is determined and the winning purchaser declared ("Purchaser");

i) Each bid made at the time of the auction must be made in at least $50,000 increments greater than the amount of the most recent bid, commencing with the amount bid by the  Initial High Bidder;

j) If the Initial High Bidder is not successful in purchasing the Remaining Portfolio because of a subsequent higher bid, the Initial High Bidder will be entitled to a break-up fee (the "Break-Up Fee") equal to 25% of the difference between the amount bid by the Initial High Bidder and the bid

k) Within 3 business days following the Hearing, the Purchaser will be required to execute a Purchase and Sale Agreement with the Receiver in form substantially similar to the one executed by the Initial High Bidder.

Relevant Law

The Receiver has a duty to preserve and protect the estate's assets for the investors and other creditors of the estate. *See, e.g., Citibank, N.A. v. Nyland (CF8) Ltd.,* 839 F.2d 93, 98 (2d Cir. 1988)*; Eller Indus., Inc. v. Indian Motorcycle Mfg., Inc.,* 929 F. Supp., 369, 372 (D. Colo. 1995*); County of Oakland v. City of Detroit,* 784 F.Supp 1275, 1286 (E.D. Mich. 1992).

In this case the Receiver has previously obtained authorization and approval to sell all of the insurance policies (the "Policy Portfolio"), and the insurance policies in the Remaining Portfolio constitute a part of the Policy Portfolio which the Receiver was previously authorized to sell. It is beyond peradventure that it is in the receivership estate's best interest to sell the Remaining Portfolio. The power to sell assets derives from the District Court's custody and control of the property subject to the receivership. *Liberte Capital Group, LLC v. Capwill,* 148 Fed. Appx. 426, 430 (6th Cir. 2005) (authorizing sale of insurance policy portfolio from viatical company in receivership). Sale of receivership assets is often warranted when they are financially burdensome or when the sale will otherwise serve the estate's best

interests. *Id.; Wuliger v. Cannella Response Television,* 2006 WL 286000, *7 (N.D. Ohio Feb. 3, 2006) (noting that a life insurance policy may become "too burdensome to maintain, thereby forcing the Receiver to sell it"). In overseeing the sale of receivership assets, the District Court may either define the procedures and conditions of the sale or give the receiver discretion to do so. *See Liberte Capital Group, LLC v. Capwill,* 462 F.3d 543, 548 (6th Cir. 2006) (requiring certain disclosures be made in connection with the receiver's sale of viatical insurance policies); *Quilling v. Trade Partners, Inc.,* 2006 WL 1134227, *1 (W.D. Mich. Apr. 26, 2006) (Dkt. 1290) (granting the receiver discretion to facilitate the sale of viatical life insurance policies).

As noted above, this Court, as well as other District Courts, have authorized receivers to sell life insurance policies from a viatical company's portfolio. In the *Liberte Capital Group* litigation, the receiver took over a portfolio of life insurance policies from the viatical company's escrow agent. *Liberte Capital Group v. Capwill,* 229 F.Supp.2d 799 (N.D. Ohio 2002). In his capacity as receiver, the receiver was authorized to "administer the sales of non-fraudulent policies" and "save other policies where justified by economic considerations." *Id.* at 801.

In this case, the Receiver and Examiner have determined that offering all of the Remaining Portfolio for sale is in the best interest of the creditors. Based on this considerable history this Court has with the issues in this case and with the Receiver, the Examiner and Special Counsel, Michael Quilling, and after careful consideration of the relevant facts, circumstances and law, the undersigned finds that it is in the best interest of the receivership estate to dispose of the Remaining Portfolio in a

commercially reasonable manner and that the procedures proposed by the Receiver are prudent and commercially reasonable and in the best interests of the receivership estate.

Accordingly, the undersigned recommends that the Receiver's Motion to Market and Sell Insurance Policies and to Establish Procedures Therefore, (Dkt. 1823), be **granted**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge

Dated: November 5, 2009