UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

M<small>ICHAEL</small> J. Q<small>UILLING</small>,

        Plaintiff,                        Hon. Robert Holmes Bell

v.                                          Case No. 1:03-cv-00236

T<small>RADE</small> P<small>ARTNERS</small>, I<small>NC</small>., et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on the corrected joint motion of the Receiver, Bruce S. Kramer, and Government Personnel Life Insurance Company ("GPML") (collectively "movants") (Dkt. No. 1924), which was referred to the undersigned by the Honorable Robert Holmes Bell for report and recommendation. The movants request that the Court order the change of ownership of a certificate of insurance. The undersigned recommends that the motion (Dkt. 1924) be granted.

On April 15, 2003, Bruce S. Kramer was appointed Receiver for Trade Partners, Inc. ("Trade Partners") (Dkt. No. 6.)

This matter relates to prior orders and opinions of the Court, specifically Dkt. Nos. 140 and 141, directing various insurance companies to transfer ownership of various life insurance policies to the Receiver or his designee, Dkt No.456, directing payment of any death benefits of subject policies to the Clerk's Office, and Dkt. 1743, Order Adopting Report And Recommendation (Dkt. No. 1715), determining the rights of "irrevocable beneficiaries."

The Receiver has also previously filed a motion to sell the policies free and clear of interests (Dkt. No. 834) and this Court entered its Opinion and Order approving the sale of the policies to Universal Settlements International, Inc. ("USI") (Dkt. Nos. 1056 and 1057). The Receiver now has a pending motion to market and sell the remaining policies not sold to or purchased by USI. The Receiver cannot sell any policy or interest in any policy that is not in his name. Consequently, it is imperative that the affected insurance company record the Receiver as owner, equitable or legal, of the affected policy or certificate of insurance on its records.

Pursuant to the Agreed Order appointing the Receiver (Dkt. No. 6), the Receiver has complete and exclusive control, possession, and custody of all Receivership Assets of Trade Partners, Inc. The Receiver contends that a particular Certificate of Insurance Coverage ("Certificate of Coverage" or "Coverage") in a Master Group Life Insurance Policy (Policy No. G-39989) originally issued by Lincoln National Life Insurance Company ("Lincoln") and administered by Military Benefits Association ("MBA") is an asset of the Receivership. The Receiver has filed a Motion for an Order to Show Cause to Lincoln National Life Insurance Company and Military Benefits Association (Dkt. No. 1815). Subsequently the Receiver filed an Amended Motion when it was determined that Government Personnel Mutual Life Insurance Company replaced Lincoln Life and is now the issuer of the Master Insurance Policy.[1]

The Receiver and GPML have stipulated to the following facts:

1. The insured (hereinafter referred to as the"Insured" or"BAB-R") applied to Military Benefit Association ("MBA") for membership and to Lincoln National Life Insurance Company ("Lincoln") for $100,000 of group term life insurance coverage on October 10, 1994. By paying extra premiums, BAB-R's coverage ("Coverage") became effective upon approval by Lincoln.

---

[1] Upon the filing of the Amended Motion, the Motion to Lincoln Life was dismissed.

2. BAB-R received a Certificate of Coverage.

3. BAB-R was diagnosed with a life threatening illness in or around January of 1995.

4. BAB-R changed the beneficiary from his mother to his estate by document dated October 28, 1997.

5. BAB-R assigned, or attempted to assign, in California, to Kelco, Inc. ("Kelco") "all of his rights, title, claim, interest, options, benefits and privileges" in Policy No. G-39989 in exchange for a substantial payment of money.

6. MBA was the policyholder of Policy No. G-39989, which was the Master Group Policy. It is agreed that BAB-R could not assign the Policy but it is agreed that BAB-R attempted to and did assign to Kelco whatever rights and interest he had with respect to the Coverage he was legally allowed to assign.

7. MBA maintained the BAB-R Coverage file for Lincoln. MBA contends that no assignment to Kelco of Policy No. G-39989 was a part of its file on the BAB-R Coverage.

8. MBA contends that the BAB-R Coverage is not assignable.

9. BAB-R also named Kelco as his attorney-in-fact under a Limited Power of Attorney on October 28, 1997. MBA states that this document was not a part of its file on the BAB-R Coverage.

10. BAB-R signed on October 28, 1997, a notification addressed to Lincoln that BAB-R had entered into a financial agreement with Kelco for viatication of his"…life insurance policy…" MBA states that this notification was not in its BAB-R Coverage file.

11. Kelco and Trade Partners, Inc. ("Trade Partners") entered in to a Policy Funding Agreement dated October 29, 1997 in which Kelco was named as the agent for Trade Partners"for the purpose of purchasing Policy G-39989 on the life of BAB-R" for the benefit of Trade Partners. Because MBA is the policyholder of Policy G-39989, which is the Master Group Policy, BAB-R

could not sell or assign and Kelco could not acquire the Master Group Policy from BAB-R. However, it is agreed that Kelco acquired from BAB-R and Trade Partners acquired from Kelco whatever, if anything, BAB-R was legally allowed to sell or assign with respect to the Coverage.

12. After Kelco and Trade Partners entered in to the Policy Funding Agreement, Trade Partners or its receiver paid all of the premiums on the BAB-R Coverage so as to maintain the Coverage in force for Trade Partners' investors/claimants.

13. After BAB-R assigned, or attempted to assign, his rights in the Coverage to Kelco, on November 10, 1997 BAB-R signed an "Election of Change of Beneficiary" form, which was "noted" by MBA on November 11, 1997. It is agreed that this change of beneficiary could not be valid if BAB-R's assignment of all rights in his Coverage to Kelco is valid.

14. After BAB-R assigned his rights in the Coverage to Kelco, on November 10, 1997 BAB-R signed an "Election of Change of Beneficiary" form, which was "noted" by MBA on December 23, 1997. It differs in that the word "IRREVOCABLE" is typed to the left of the listing of beneficiaries, and BAB-R's signature is very slightly different. It is agreed that his change of beneficiary could not be valid if BAB-R's assignment of all rights in his Coverage to Kelco is valid; but is also agreed that if such assignment is not valid, it is a valid designation by BAB-R of irrevocable beneficiaries, and that such beneficiaries are Trade Partners' investors designated by Trade Partners to BAB-R's Coverage. Because of the "pooling" adopted in this receivership, the designation of particular investors by Trade Partners to a particular policy is not binding. Further, the designation as "irrevocable" is also not determinative as the Court has determined that "irrevocable beneficiaries" are to be treated as all other beneficiaries and are Class "A" claimants in the receivership.

15. Lincoln's Group Master Policy no. G-39989, under which BAB-R was covered, terminated in

2001. BAB-R's Coverage was continued under a Group Master Life Insurance Policy issued to MBA by Government Personnel Mutual Life Insurance Company ("GPML").

16. A portion of the Master Group Policy of Life Insurance No. G-39989 under which BAB-R was covered states:"This policy is delivered in Washington, D.C., and is governed by its laws. If any part(s) of this policy is contrary to such laws, that part(s) is hereby amended to conform to such laws."

17. Another portion of the Master Group Policy of Life Insurance under which BAB-R was covered prevented assignment of the coverage. This language was also in BAB-R's Certificate of Coverage.

18. The law in Washington D.C. allowed a Master Group Policy of Life Insurance to restrict assignment of rights and benefits.

19. The law in California allowed a Master Group Policy of Life Insurance to restrict assignment of incidents of ownership, but notwithstanding that restriction it provides that"any person who has been diagnosed with a terminal illness shall have the right to make an absolute assignment for value of his…interest in a…certificate of life insurance."

The parties have submitted for the court's determination whether a) the validity of the assignment of BAB-R's coverage to Kelco is controlled by Washington D.C. law, or by California law, and b) if controlled by Washington D.C. law, whether the receiver has rights in the BAB-R Coverage which it can transfer. The Master Group Life Insurance Policy in effect at the time of the purported assignment by BAB-R to Kelco and Kelco to Trade Partners specified that the policy would be"governed" by Washington, D.C. law. A comprehensive article on the choice of law provisions in group insurance polices is published at 53 ALR3rd 1095, et. seq. That article says:"Thus, where it is provided by the contract of insurance itself that it shall be construed in accordance with the laws of a particular place,

and where this stipulation is valid, such provision will, as a general rule, control the construction and effect of the contract regardless of the place of execution or performance." Cited in the article is the Restatement, Conflicts of Laws 2nd, section 192, for the proposition that choice of laws provisions in group insurance policies are more likely to be given effect than in ordinary insurance because group policies are more likely to be negotiated by the parties, more people are covered under them, and uniformity of interpretation and effect of the policy is desirable.

However, see *Travelers Life Insurance Company v. Fields*, 451 F.2d 1292 (6th Cir. 1971), which involved a Kentucky citizen who worked in Ohio, and who was covered under a group insurance policy which said the policy was to be governed by the law of Ohio. He named his then wife as the beneficiary. He and his wife were divorced in Kentucky. Their divorce settlement contained a restoration of property provision based on a Kentucky statute, but did not mention the policy proceeds. He remarried, and then died without having changed the beneficiary. His former wife/beneficiary and his widow both claimed the proceeds. The former wife argued that Ohio law, which would not disqualify her from being the beneficiary, should apply. The U.S. District Court in Kentucky held that the divorce decree and Kentucky's restoration of property statute disqualified the former wife and said that the choice of law provision in the group policy would be more likely to be given effect for resolution of questions concerning the operation of the insurance policy terms.

Since the prohibition against assignment in the Lincoln policy was a policy term, it could be argued that the law of Washington, D.C. applies. However, California, where the assignment to Kelco/Trade Partners took place, has a statute which specifically allowed BAB-R to assign his rights if he had been diagnosed with a terminal illness. At the time of the assignment, BAB-R had been diagnosed with a terminal illness. If California law applies, the assignment was valid. If Washington D.C. law applies, it was not.

In selling interests in the life insurance policies and certificates that Trade Partners sold to investors, Trade Partners made promises to investors to continue paying premiums and to service the policies and certificates of coverage that were the basis of investors' purchases. Trade Partners and the Receiver have fulfilled those promises and have paid the premiums. Lincoln and GPML have received the premiums. BAB-R has received value for the assignment to Kelco/Trade Partners.

If the Receiver is not able to transfer the BAB-R Coverage, the receivership will have lost the purchase price paid to BAB-R as well as the premiums paid. If the Receiver is not able to sell and transfer the BAB-R Coverage, the Receiver would either have to abandon the Coverage or keep the receivership open until the Coverage "matures."

The movants agree that BAB-R's intention was to sell his interest by assignment of the Coverage and to extinguish his rights in the Coverage, at least as shown by his naming irrevocable beneficiaries. The movants agree that Trade Partners and the Receiver must have received and been vested in some rights, whether equitable or in the nature of making the Receiver a constructive trustee, or by estoppel, that can be transferred by the Receiver so as not to needlessly extend the receivership. Further, this Receivership is an equitable matter over which the Court has broad discretion. Finally, Washington, D.C. has no discernable interest in the issue before the Court.

The undersigned recommends that the Corrected Joint Motion for Order Directing Change of Ownership (Dkt. 1924) be **granted**, and that the Court determine that:

1. as an equitable matter, California law governs the transaction between the Insured, BAB-R, and Kelco / Trade Partners, and;
2. under the applicable law and the stipulated facts, the Receiver acquired an equitable interest in the Certificate of Coverage, and;

3. Military Benefits Association and Government Personnel Mutual Life Insurance Company should be ordered to record the Receiver, Bruce S. Kramer, as the equitable owner of the $100,000 Certificate of Coverage issued under Master Group Policy of Life Insurance No. G-39989.

Respectfully submitted,

Date: June 24, 2010

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).