IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL J. QUILLING,

    Plaintiff,

v.

TRADE PARTNERS, INC., et al

    Defendants

_____/

Case No.: 1:03-CV-00236

Hon. Robert Holmes Bell

REPORT AND RECOMMENDATION

This matter is before the Court on the Receiver's Motion to Approve the Purchase and Sale Agreement with Lexington Settlements, Ltd. (Lexington Settlements) (Dkt.1938) filed May 18, 2010, which was referred to the undersigned by the Honorable Robert Holmes Bell for report and recommendation pursuant to 28 U.S.C. 636 (b) (1) (A).

Adequate Notice of the Motion to Approve the Purchase and Sale Agreement,, together with a copy of the Purchase Agreement, and Bid Procedures (Dkt.1938-2) was provided by electronic filing to all interested parties and by posting on both the Receiver's and Examiner's websites (www.bskreceiver.com and www.tpexaminer.com.)

The undersigned Magistrate Judge conducted a hearing on the Receiver's Motion on July 14, 2010 at 9:00 AM at 654 Federal Building, Grand Rapids, MI.

BRIEF FACTUAL BACKGROUND

The Receiver previously filed a Motion to Approve Sales Procedures and to Authorize Sale of Policies Free and Clear of Interest (Dkt. 834). In a previous Report and Recommendation dated May 23, 2005, this Magistrate Judge recommended that the Receiver's previous Motion be granted. (Dkt.1017). The District Court issued an opinion on July 19, 2005 approving the Report and Recommendations (Dkt. 1057). In accord with the District Court's Order, the Receiver entered into a Sales Agreement with Universal Settlements International, Inc. (USI), which Agreement was approved by the Court. Subsequently, the Receiver sought termination of the Purchase and Sale Agreement with Universal Settlements International, Inc. Following notice and hearing, the Court approved the Receiver's Motion to enter into a settlement agreement and mutual release with USI, which terminated the Purchase and Sale Agreement (Dkt. 1743).

As a result of the termination and settlement with USI, the Receiver is presently administering approximately 60 life insurance policies with a face value of death benefits of approximately Six Million Dollars ($6,000,000.00). The Receiver filed a Motion to Market and Sell Remaining Portfolio, Approve Sales Procedures and to Authorize Sale of Policies Free and Clear of Interest (Dkt. 1823). That Motion was referred to the undersigned. There were no objections to the Receiver's Motion and on October 6, 2009, this Magistrate Judge considered the Receiver's Motion, statements of the Examiner and Receiver, and issued a Report and Recommendation to grant the motion. (Dkt.1845). The District Court adopted the report and recommendation by Order on January 16, 2010. (Dkt. 1887). The Receiver subsequently entered into the Purchase and Sale Agreement with Lexington Settlements, which is before the court upon the above referenced referral.

Pursuant to an Agreed Order dated April 15, 2003 (Dkt. 6) (the "April 15, 2003 Agreed Order") and a subsequent Order dated July 21, 2003 (Dkt. 141) (the "July 21, 2003 Order" and collectively with the April 15, 2003 Order, the "Order Appointing Receiver") Bruce S. Kramer was appointed Receiver for Trade Partners, Inc. and related and affiliated entities, including various trusts and limited liability companies (collectively, "Trade Partners") and was authorized to have complete and exclusive control, possession, and custody of all Receivership Assets of Trade Partners. "Receivership Assets" were defined in the April 15, 2003 Order as "the assets, monies, securities, choses in action, and properties, real and personal, tangible and intangible, of whatever kind and description, wherever situated, of Defendant Trade Partners, Inc." (¶ 1, April 15, 2003 Agreed Order Appointing Receiver).

The Receiver has been acting and fulfilling his duties as Receiver since his appointment and has marshaled the Receivership Assets for the benefit of Trade Partners' creditors and investors. The Court has also approved the Receiver's Plan and Distribution, which has resulted in the distribution of approximately $55,000,000.00 to over 3500 approved claimants with over 10,500 claims.

As noted above, the Receiver, with prior Court approval, entered into a Purchase and Sale Agreement to sell the entire Trade Partners insurance Portfolio to USI. Because of various issues, the Receiver filed a Motion to Terminate the Purchase and Sale Agreement under a Mutual Settlement and Termination Agreement (Dkt. 1743). After a hearing on the Motion, the Magistrate Judge issued a Report and Recommendation (Dkt. 1784) and the Court entered an Order Approving the Report and Recommendation granting the Receiver's Motion approving the Settlement Agreement and terminating the contract with

USI. (Dkt.1790). As a result of the termination of the Purchase and Sale Agreement with USI, the Receivership retained ownership of, and the Receiver and has been administering, approximately 60 insurance policies with face death benefits of approximately $6,000,000 (the "Remaining Portfolio") [1].

The Remaining Portfolio is the only remaining major asset that needs to be disposed of in order to maximize distribution to the creditors and close the estate.

In accord with the previous orders of the Court, the Receiver adhered to the approved procedures to secure the highest and best price for the Remaining Portfolio "as is, where is" and without representations and warranties by soliciting interest from potential purchasers. The Examiner contacted approximately 22 potential purchasers by email and posted the inventory of the Remaining Portfolio available for sale on the websites of the Examiner and Receiver. After potential purchasers expressed interest, the Examiner obtained a confidentiality agreement from the potentially interested purchasers who responded to the solicitation and they in turn conducted their due diligence. Three potential purchasers submitted offers before the Receiver negotiated the Purchase and Sale Agreement with Lexington.

## RELEVANT LAW

The Receiver has a duty to preserve and protect the estate's assets for the investors and other creditors of the estate. *See, e.g., Citibank, N.A. v. Nyland (CF8) Ltd.,* 839 F.2d 93, 98 (2d Cir. 1988)*; Eller Indus., Inc. v. Indian Motorcycle Mfg., Inc.,* 929 F. Supp., 369, 372 (D. Colo 1995*); County of Oakland v. City of Detroit,* 784 F.Supp 1275. 1286 (E.D. Mich. 1992).

---

[1] In addition to these approximately 60 policies, the Receiver also has limited or partial interests in other life insurance policies referred to as External Policies. Although not specifically included in the "portfolio", the Receiver intends to convey these partial interests to Lexington for additional consideration.

In this case the Receiver has previously obtained authorization and approval to sell all of the insurance policies (the "Remaining Portfolio"), and the insurance policies in the Remaining Portfolio constitute a part of the Policy Portfolio which the Receiver was previously authorized to sell. It is beyond peradventure that it is in the receivership estate's best interest to sell the Remaining Portfolio. The power to sell assets derives from the District Court's custody and control of the property subject to the receivership. *Liberte Capital Group, LLC v. Capwill,* 148 Fed. Appx. 426, 430 (6th Cir. 2005) (authorizing sale of insurance policy portfolio from viatical company in receivership). Sale of receivership assets is often warranted when they are financially burdensome or when the sale will otherwise serve the estate's best interests. *Id.; Wuliger v. Cannella Response Television,* 2006 WL 28600, *7 (N.D. Ohio Feb. 3, 2006) (noting that a life insurance policy may become "too burdensome to maintain, thereby forcing the Receiver to sell it"). In overseeing the sale of receivership assets, the District Court may either define the procedures and conditions of the sale or give the receiver discretion to do so. *See Liberte Capital Group, LLC v. Capwill,* 462 F.3d 543, 548 (6th Cir. 2006) (requiring certain disclosures be made in connection with the receiver's sale of viatical insurance policies); *Quilling v. Trade Partners, Inc.,* 2006 WL 11342277, *1 (W.D. Mich. Apr. 26, 2006) (Dkt. 1290) (granting the receiver discretion to facilitate the sale of viatical life insurance policies).

As noted above, this Court, as well as other District Courts, has authorized receivers to sell life insurance policies from a viatical company's portfolio. In the *Liberte Capital Group* litigation, the receiver took over a portfolio of life insurance policies from the viatical company's escrow agent. *Liberte Capital Group v. Capwill,* 229 F.Supp.2d 799 (N.D. Ohio 2002). In his capacity as receiver, the receiver was authorized to "administer the sales of

non-fraudulent policies" and "save other policies where justified by economic considerations." *Id.* at 801.

In this case, the Receiver and Examiner have determined that offering all of the Remaining Portfolio for sale is in the best interest of the creditors. The Examiner and Receiver have determined that the purchase price is both fair and reasonable considering the nature of the policies and the current market conditions. The cost of administration out weighs the benefit of maintaining the policies to maturity.

Proper and reasonable notice has been provided to the creditors and other interested parties. There has been no objection to the Receiver's Motion or to the adequacy of notice or the purchase price.

Based on this considerable history this Court has with the issues in this case and with the Receiver, the Examiner and Special Counsel and after careful consideration of the relevant facts, circumstances and law, the undersigned finds that it is in the best interest of the receivership estate to sell of the Remaining Portfolio to Lexington Settlements or its designee, Kensington Ltd. in accord with the Purchase and Sale Agreement.

The Purchase and Sale Agreement with Lexington, as did the previous portfolio sale agreement with USI, provides that the Receiver is paid upon the transfer of the policy to the purchaser that is the recording of a change of ownership by the affected insurance company. Based on this considerable history this Court has with the change of ownership process, and the knowledge of the difficulties experienced by the Receiver to have the insurance companies change ownership of policies, despite the clear and unambiguous orders of this Court, it is the further recommendation that any order approving the sale specifically contain language that the affected insurance companies process any request by the Receiver

to change ownership from the Receiver to Kensington Ltd. within 30 days of receipt of the request, and failure to do so subject the affected insurance company to substantial sanctions.

Accordingly, the undersigned recommends that the Receiver's Motion to Approve the Purchase and Sale Agreement with Lexington Settlements, Ltd. Free and Clear of Any Interests, (Dkt. 1938), for the purchase price of three and seventy five one hundredths percent (3.75%) of the total face death benefits of the policies being sold, be **granted**. The exact dollar amount to be paid by the purchaser will be determined when and as of the date that the policies or a policy is actually transferred to the purchaser.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b) (1) (C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    Respectfully submitted,

    /s/ Ellen S. Carmody
    ELLEN S. CARMODY
    United States Magistrate Judge

Dated: 08/12/2010