UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL J. QUILLING,

    Plaintiff,                                        Hon. Robert Holmes Bell

v.                                                              Case No. 1:03-cv-236

TRADE PARTNERS, INC., et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on the Receiver's <u>Motion for Issuance of Show Cause Order to Metropolitan Life Insurance Company</u>. (Dkt. #1878). On April 15, 2003, the Honorable Richard Alan Enslen entered an Order granting the Receiver "complete and exclusive control, possession, and custody" of the various assets of Trade Partners, Inc. (Dkt. #6). Asserting that Metropolitan Life Insurance Company (MetLife) failed to transfer to the Receiver ownership of a particular life insurance policy, which subsequently lapsed, the Receiver moves the Court to order MetLife to show cause why it should not reinstate the policy in question and transfer ownership thereof to the Receiver. Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that the Receiver's motion be **denied**.

### BACKGROUND

On July 23, 1988, New England Mutual Life Insurance Company (New England Life) issued policy number U098886 insuring the life of Darryl Brooks. (Dkt. #1953, Exhibit A). The face value of this policy was one-hundred thousand dollars ($100,000.00) and the "planned annual premium"

was five-hundred eighty-two dollars and twenty-two cents ($582.22). *Id.* at § 1. The policy provides that "[o]n the first day of each policy month the Company will make a Monthly Deduction for that policy month from the Cash Value of [the] Policy." *Id.* at § 6. The policy provides that if the Net Cash Value on the first day of a policy month is less than the amount of the Monthly Deduction, a premium notice will be mailed to the Owner at the address "on record with the Company." *Id.* at §§ 3, 6. The policy provides for a grace period "of 62 days from the date when the Monthly Deduction was due in which to pay a premium large enough to permit the Monthly Deduction to be made." *Id.* at § 6. If the premium is not paid by the end of the grace period, "the Policy will lapse without value." *Id.*

If the policy lapses, it can be reinstated by doing the following: (1) submitting an application to reinstate; (2) providing proof that the insured is then insurable; (3) paying a premium large enough to keep the policy in force for at least two months; and (4) pay or reinstate any policy loan balance which existed on the date the policy lapsed. *Id.* at § 7. With respect to a change in ownership thereof, the policy provides that a change of owner "must be in written form satisfactory to the Company, and must be dated and signed by the Owner who is making the change." *Id.* at § 13. To effect an absolute assignment of the policy, an "assignment form" must be completed. *Id.*

On October 11, 1995, Lois Johnson sold to Donald Stevens her interest in a piece of real property in return for which she received (in part) a life insurance policy valued at one-hundred thousand dollars ($100,00.00). (Dkt. #1953, Exhibit C). While it is not clear from the documentation provided, the parties do not appear to dispute that the life insurance policy referenced in the sales documents is New England Life policy number U098886 insuring the life of Darryl Brooks.

On March 29, 1996, Trade Partners, Inc. and Kelco, Inc. executed a Policy Funding Agreement by which Trade Partners agreed to "deposit" fifty-thousand dollars ($50,000.00) with Kelco

"for the purpose of acquiring" a one-hundred percent interest in New England Life policy number U098886 insuring the life of Darryl Brooks. (Dkt. #1953, Exhibit D).

Pursuant to an April 12, 1996 Purchase Agreement for Assignment of Life Insurance Policy, Brooks transferred to Kelco his interest in a New England Life policy "on the life of" Darryl Brooks. (Dkt. #1953, Exhibit E). While the purchase agreement appears to have originally included the policy number of the policy in question, such has been redacted in the copy provided to the Court. Payment to Brooks of the purchase price ($26,583.56) was contingent on completion of the following: (1) execution of the Purchase Agreement; (2) physical transfer of the policy; (3) execution of a waiver by the current Beneficiary; (4) execution by Brooks of a form for Transfer of Ownership and Control; (5) "[a]ny other document required by the insurance carrier of the Policy to effect transfer of Ownership or Absolute Assignment of the Policy to the Purchaser"; and (6) any other document which Kelco deems necessary. On the same day, Brooks executed a limited power of attorney authorizing Kelco "to prepare and consummate certain transactions. . .for the purchase and sale of" New England Life policy number U098886 insuring the life of Darryl Brooks. Included with these two documents is a Release of Beneficiary Rights executed by Denise Brooks on April 8, 1996. *Id.*

On April 15, 1996, Brooks submitted to New England Life an "Absolute Assignment" form in which he assigned to Lois Johnson "all ownership and beneficial rights" in policy number U098886. (Dkt. #1953, Exhibit F). New England Life confirmed this transfer on May 24, 1996, identifying the owner of the policy as Lois Johnson whose billing address was in Ionia, Michigan. (Dkt. #1953, Exhibit G).[1]

---

[1] MetLife asserts that neither it nor New England Life ever received the aforementioned Policy Funding Agreement, Purchase Agreement, Limited Power of Attorney, or Release of Beneficiary Rights. (Dkt. #1953 at 4). The Court notes, however, that in a subsequent pleading, MetLife submitted a copy of a Release of Beneficiary Rights form executed by Denise Brooks on April 8, 1996, which it alleges it "received." (Dkt. #1979, Exhibit A). MetLife acknowledges that this

On March 18, 2002, Trade Partners mailed a letter to Lois Johnson informing her that her "life settlement purchase. . .has not matured as expected." (Dkt. #1974, Exhibit 3). Trade Partners agreed to begin paying to Johnson five thousand dollars ($5,000.00) monthly until either: (1) the total death benefit is paid, or (2) the policy matures, at which point the remaining balance of the one-hundred thousand dollars ($100,000.00) would be paid. Johnson was instructed that to receive such payments she would need to execute Change of Beneficiary forms naming TPI Trust as beneficiary under the policy. *Id.* The Receiver asserts that Johnson received four payments from Trade Partners totaling twenty-thousand dollars ($20,000.00). (Dkt. #1974 at 4). However, these payments were allegedly discontinued "[w]hen Lois Johnson failed to sign certain paperwork as required by Trade Partners." *Id.*

On April 15, 2003, the Receiver was given "complete and exclusive control, possession, and custody" of Trade Partner's assets. (Dkt. #6). On July 21, 2003, Judge Enslen entered an Order providing, in part, that "all affected insurance companies shall provide the Receiver with the requested policy information and shall make the requested ownership changes upon notice of this Order." (Dkt. #141). Judge Enslen's Order does not identify MetLife, New England Life, or any particular insurance provider as one of the "affected insurance companies" to which the Order applied. The Order likewise did not identify any particular policy to which the Order applied.

On April 15, 2004, the Receiver transmitted to New England Life a letter along with a copy of Judge Enslen's July 21, 2003 Order. (Dkt. #1974 at 5). This letter states that it "constitutes your authorization to release information to [the Receiver or his agent] National Viatical, Inc. and any

---

document "also appears as the last page of Exhibit E to the MetLife Statement of Facts." This Release of Beneficiary Rights form is drafted under Kelco letterhead. This certainly raises the question whether MetLife and/or New England Life did, in fact, receive the Policy Funding Agreement, Purchase Agreement and Limited Power of Attorney. It is just as possible, however, that Darryl Brooks transmitted just the release of rights form as part of his notification to New England Life of his assignment to Lois Johnson of his ownership interest in the policy. The Receiver offers no evidence on the question. Nonetheless, even if the Court assumes that MetLife and/or New England Life did receive these various documents, it does not alter the Court's conclusions for the reasons discussed below.

of their employees, pertaining to any policies that are owned or have assignments of beneficial rights to any of the following entities: Kelco, Inc., Trade Partners, Inc., and any trusts related to those companies that hold ownership and or beneficial rights to life insurance policies with your company." (Dkt. #1974, Exhibit 5). While the letter contained the aforementioned reference to Kelco and Trade Partners, it did not identify any particular policy, policy owner, or insured to which the inquiry was directed. *Id.*

On September 7, 2004, New England Financial (NEF) notified Lois Johnson that it had received a request from the Receiver "to pay only the cost of insurance" on the policy in question and, furthermore, to "change the premium notices to the amount of the cost of insurance." (Dkt. #1953, Exhibit J). NEF informed Johnson that because its records indicated that she "is the owner of this policy, we can only process changes with her signature." NEF further stated that "Trade Partners has no rights to the policy." *Id.*

On October 27, 2004, the Receiver transmitted a second letter to New England Life a letter along with a copy of Judge Enslen's July 21, 2003 Order. (Dkt. #1974 at 6). The text of this letter was identical to the April 15, 2004 letter quoted above. *Id.* Again, while this letter contained the aforementioned reference to Kelco and Trade Partners, it did not identify any particular policy, policy owner, or insured to which the inquiry was directed. *Id.*

On July 18, 2005, Lois Johnson wrote a letter to the Receiver stating that she "accepted a policy from Trade Partners" ten years previous in return for "a valuable piece of property." (Dkt. #1953, Exhibit K). Johnson also informed the Receiver that she had received a bill from "NEF"[2] which she was unable to pay. *Id.*

---

[2] NEF appears to refer to New England Financial, a "MetLife Affiliate." *See* Dkt. #1953, Exhibit J).

The record contains a "Required Payment Notice" mailed by MetLife to Lois Johnson regarding a policy insuring Darryl Brooks. (Dkt. #1953, Exhibit L). This notice informed Johnson that "the Net Cash Value of [her] policy is insufficient to cover the monthly deduction." Accordingly, Johnson was informed that she currently owed one-thousand two-hundred ninety-eight dollars and forty-six cents ($1,286.46), which was due no later than January 23, 2008. Johnson was further informed that "[i]f payment is not made by [March 25, 2008], your policy will lapse." *Id.* The requisite payments were not made and Lois Johnson was notified on or about April 3, 2008, that the policy had lapsed. (Dkt. #1953, Exhibit M).

On or about August 29, 2008, the Receiver submitted to MetLife a request to reinstate the subject policy. The Receiver was instructed to submit a reinstatement form along with payment in the amount of five-hundred eighty-two dollars and twenty-two cents ($582.22), after which point the request for reinstatement would be considered. The reinstatement form was mailed to Lois Johnson. While the necessary payment was made to MetLife, the reinstatement form was never submitted. *Id.* The payment was later refunded. (Dkt. #1953, Exhibit N).

## **ANALYSIS**

The Receiver requests that the Court order MetLife to "immediately reinstate the Policy and change the ownership of the Policy to the Receiver or pay the Receiver $26,580 plus his costs and expenses, including reasonable attorneys' fees." (Dkt. #1878 at 7). The Receiver also moves the Court to hold MetLife "in civil contempt of this Court for violation of the Court's Orders" and further requests any "further relief, general or special, at law or in equity" to which he is entitled. (Dkt. #1878 at 8).

In support of these requests, the Receiver has advanced several arguments, each of which is addressed below.

The Receiver first argues that the Policy should not have lapsed for non-payment of premiums because payment of the premiums was waived by application of the Policy's Disability Premium Waiver clause.[3] In support of this argument, the Receiver has submitted a December 9, 1999 facsimile from Joyce Werling to The New England Insurance Co. (Dkt. #1974, Exhibit 1). Werling stated that she "represent[ed] the assignee[4] of this policy" and was "checking the status on the Disability Premium Waiver of this policy." *Id.*

The Receiver asserts that "[o]n January 1, 2000, a phone call was placed to New England inquiring about the status of the Disability Premium Waiver for the Policy." (Dkt. #1974 at 2). An employee named Mark allegedly informed the caller that "the Disability Premium Waiver for the Policy was effective until July 23, 2020, but had not yet been activated." *Id.* The Receiver's assertions regarding this telephone call, however, are not contained in an affidavit or sworn statement and are not supported by any other evidence.

The Receiver has failed to establish that the payment of premiums on the Policy was waived by application of the Policy's Disability Premium Waiver clause. The Receiver has presented no evidence that Darryl Brooks was ever totally disabled as required by the Policy to invoke this provision. With respect to the reliance that the Receiver places on the January 1, 2000 telephone call to New England Life, the Court is not persuaded. First, the Receiver has submitted no evidence that any

---

[3] The Policy contains a rider that provides for the waiver of the "monthly deductions for the Policy" upon "proof that total disability of the Insured" began while the rider was in force and that the disability continued for at least six months. (Dkt. #1953, Exhibit A at 17).

[4] The facsimile does not identify the purported assignee.

such call took place or that the contents thereof are as reported. More significantly, the description of the call does not even support the Receiver's position. The New England employee with whom the caller spoke, Mark, indicated that "the Disability Premium Waiver for the Policy was effective until July 23, 2020, but had not yet been activated." The Receiver interprets this statement as, in effect, indicating that the requirements of the Disability Premium Waiver had been satisfied and that payment of premiums would be (but had not yet) waived. While this is perhaps a reasonable interpretation, a much more plausible interpretation of Mark's statement is that Disability Premium Waiver rider was effective (i.e. could be invoked) until July 23, 2020, but "had not yet been activated" (i.e., the requirements to invoke the Waiver had not yet been satisfied). In sum, the Receiver has not demonstrated that the payment of premiums should have been waived pursuant to the Disability Premium Waiver (or any other) provision of the Policy.

The Receiver next argues that even if the payment of premiums were not subject to waiver under the aforementioned provision, "New England failed to follow the correct procedures regarding reinstatement of the Policy." The Receiver has failed to identify any procedural irregularity or impropriety regarding his attempt to reinstate the Policy, but instead argues, in effect, that the Policy should be considered an asset of the Receivership.

As noted above, on April 15, 1996, Darryl Brooks submitted to New England Life an "Absolute Assignment" form in which he assigned to Lois Johnson "all ownership and beneficial rights" in policy number U098886. The Receiver argues that because Brooks then resided in a community property state, this purported assignment was invalid without an accompanying waiver of rights executed by Brooks' wife. As discussed above, Denise Brooks executed (under Kelco letterhead) a Release of Beneficiary Rights on April 8, 1996. The Receiver argues that for the assignment to Lois

-8-

Johnson to be effective, New England Life had to have received the release executed by Denise Brooks, which if received by New England Life demonstrates that it had knowledge of the April 12, 1996 transaction between Brooks, Kelco, and Trade Partners whereby Brooks transferred to Kelco/Trade Partners his interest in the policy.

MetLife counters that the assignment to Lois Johnson is valid because in addition to receiving the "Absolute Assignment" form from Darryl Brooks, it also received the Release of Beneficiary Rights executed by Denise Brooks, a copy of which they have submitted. MetLife also asserts that it was never informed of the transaction between Brooks, Kelco, and Trade Partners. As noted above, the acknowledged receipt by New England Life of Denise Brooks' release of rights raises the question whether MetLife and/or New England Life did, in fact, receive the various other documents evidencing the April 12, 1996 transaction between Brooks, Kelco, and Trade Partners. Again, it is possible that Darryl Brooks transmitted just the release of rights form as part of his notification to New England Life of his assignment to Lois Johnson of his ownership interest in the policy.

In support of his position, the Receiver has submitted an August 3, 1996 Policyholder Annual Statement mailed to Lois Johnson in care of Trade Partners at Trade Partners' corporate address. (Dkt. #1974, Exhibit 2). The Receiver asserts that such demonstrates that New England Life was aware of the transaction between Brooks, Kelco, and Trade Partners. Even assuming that such is the case, that this document was mailed to Lois Johnson seems to make clear that New England Life continued to identify Lois Johnson as the owner of the Policy. Such should have put Trade Partners and/or Kelco on notice that the purported assignment of the Policy to Kelco or Trade Partners was somehow ineffective or that MetLife and/or New England Life had not received appropriate notification of such. In sum, the Receiver has failed to establish that MetLife or New England Life had knowledge of the

transaction between Darryl Brooks, Kelco, and Trade Partners. Furthermore, even if the Court assumes that MetLife and/or New England Life had knowledge of such the result is the same.

Under the express terms of the Policy, a change in ownership thereof must be accomplished "in written form satisfactory to the Company, and must be dated and signed by the Owner who is making the change." (Dkt. #1953, Exhibit A at § 13). The Policy further provides that an assignment of the Policy by the owner is to be accomplished using "the assignment form." *Id.* While the April 12, 1996 Purchase Agreement between Darryl Brooks and Kelco purports to assign ownership of the Policy to Kelco, the Receiver offers no evidence that such constitutes "written form satisfactory to the Company" to effect a change in ownership. Moreover, there is no evidence that the appropriate assignment form (e.g., that used to assign the Policy to Lois Johnson) was ever completed to effect an assignment of the Policy to Kelco.

The Receiver next argues that "[a]s a matter of law, Lois Johnson relinquished her ownership in the Policy when she submitted and this Court approved her $80,000 claim against Trade Partners." (Dkt. #1974 at 4). This argument assumes, however, that Kelco and/or Trade Partners were properly considered owners and/or beneficiaries of the Policy in question. As discussed herein, however, the Receiver has failed to demonstrate that such is the case.

Finally, the Receiver argues that New England Life violated Judge Enslen's July 21, 2003 Order directing "all affected insurance companies" to "provide the Receiver with the requested policy information" and to "make the requested ownership changes upon notice of this Order." As previously noted, Judge Enslen's Order did not identify any particular policy to which the Order applied. On two occasions, the Receiver delivered to New England Life a copy of Judge Enslen's Order accompanied by a letter in which the Receiver instructed New England Life to "release information. . .pertaining to

any policies that are owned or have assignments of beneficial rights to any of the following entities: Kelco, Inc., Trade Partners, Inc., and any trusts related to those companies that hold ownership and or beneficial rights to life insurance policies with your company." While the Receiver's letter referenced Kelco and Trade Partners, it did not identify any particular policy, policy owner, or insured to which the inquiry was directed. As MetLife correctly asserts, the Policy in question did not fall within the parameters of Judge Enslen's Order or the Receiver's accompanying letter. The Court, therefore, finds no evidence that either MetLife or New England Life violated Judge Enslen's July 21, 2003 Order.

In conclusion, the Receiver has failed to persuade the Court that MetLife or New England Life acted inappropriately, contrary to its operating policies or the terms of the Policy, contrary to law, or that equity would be best served by granting the relief sought. While the various parties may have intended to convey to Kelco/Trade Partners an ownership, assignee, or beneficial interest in the Policy, as discussed above such was not properly effected. Moreover, as discussed above, Kelco/Trade Partners, and more importantly, the Receiver were placed on notice of such through various communications with MetLife, New England Life, and/or Lois Johnson, but failed to properly rectify the situation.

For example, on March 18, 2002, Trade Partners contacted Lois Johnson and instructed her to execute a Change of Beneficiary form naming TPI Trust as beneficiary under the Policy. (Dkt. #1974, Exhibit 3). The Policy provides that only the owner of the policy can effect a change in beneficiary. (Dkt. #1953, Exhibit A at § 13). Thus, as of March 2002, Trade Partners consider Lois Johnson to be the owner of the policy. On September 7, 2004, New England Financial (NEF) notified Lois Johnson that "Trade Partners has no rights to the policy." (Dkt. #1953, Exhibit J). On July 18, 2005, Lois Johnson informed the Receiver that she received a bill from NEF which she was unable to

pay. (Dkt. #1953, Exhibit K). MetLife subsequently mailed to Lois Johnson a "Required Payment Notice" informing her that if she did not pay the required amount by March 25, 2008, the Policy would lapse. (Dkt. #1953, Exhibit L).

The Court finds that equity is not served by permitting the Receiver to obtain through an after-the-fact Court order what he could have accomplished had he taken appropriate and timely action in response to the various notices he received that MetLife and New England Life (properly) considered Lois Johnson to be the owner of the policy in question. *See, e.g., Garcia v. Board of Education Albuquerque Public Schools*, 520 F.3d 1116, 1129 (10th Cir. 2008) ("equity will not help those who do not help themselves"); *Metro Motors v. Nissan Motor Corp. in U.S.A.*, 339 F.3d 746, 750 (8th Cir. 2003) (same). Accordingly, the undersigned recommends that the Receiver's motion be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: March 22, 2011        /s/ Ellen S. Carmody
                            ELLEN S. CARMODY
                            United States Magistrate Judge